ON APPLICATION FOR WRITS
KLIEBERT, Judge.
On June 29, 1983, a man later identified as Samuel Gentry entered the offices of Associated Forwarders, Inc., a shipping company located in the International Trade Mart Building in New Orleans. Gentry produced a package which he stated he wished to send to an address in France. At that time the shipping agent requested that Gentry complete a form, or airbill, indicating the name and address of the shipper and the consignee, which Gentry did, using a false name and address as his own. Gentry was charged $54.00 for shipping the package, and paid by a check with his name imprinted on it.
The package was accepted by the agent, Ernesto Lugo, who put it in an envelope for DHL Worldwide Courier Service for whom Associated is an agent. Lugo then placed the envelope in a mailbag, which was in turn transported for final packaging to the DHL offices located at the airport in Ken-ner.
When the envelope containing the package was received by DHL, its employee, Brian Manchester, noticed that the envelope did not conform to shipping specifications; it appeared to contain a hard, flat object other than the documents it supposedly held. In order to ensure that the package met customs restrictions, Manchester, in the presence of the station manager, Joseph Schoenbaechler, opened the envelope and the package, and discovered a plastic audio cassette holder which contained not a cassette tape, but a plastic bag with a white powdery substance inside. Presuming the substance to be narcotics, Schoenbaechler contacted the local Drug Enforcement Agency office. The DEA in turn notified Detective Henry Richardson of the Kenner Police Department, who con *775 fiscated the package. Analysis of the substance revealed it to be cocaine.
On August 3, 1983, a bill of information was filed by the Jefferson Parish District Attorney’s Office charging the defendant, Samuel Gentry, with distribution of cocaine, a violation of La.R.S. 40:967. The defendant was arraigned on September 21, 1983, and entered a plea of not guilty. Pre-trial motions for discovery, motion to suppress, and motion to quash were heard on January 16, February 27, March 14 and March 19, 1984. The trial court ultimately denied both the motion to suppress and the motion to quash.
On March 26, 1984, the defendant filed with this court an application for supervisory writs, requesting that this court review and annul the trial court’s denial of the motion to quash and motion to suppress the evidence and the identification. This court granted defendant’s writ of review.
MOTION TO QUASH IMPROPER VENUE
The defendant urged the indictment be quashed because the State is unable to prove he committed a crime in the Parish of Jefferson, therefore Jefferson is an improper venue. The essence of his contentions are: “[n]one of the elements of the alleged offense [violation of R.S. 40:967A] were committed by the defendant in the Parish of Jefferson nor were any of the acts of the defendant committed in the Parish of Jefferson,” and further because “[t]he defendant did not direct, order or control, even constructively any elements or acts or any other person, firm or corporation in the Parish of Jefferson.”
The State on the other hand contends the distribution of the drug should be viewed as a continuous crime, not complete until the delivery has been made.
The controlling statutory law as to venue is La.C.Cr.P. Article 611 which provides:
All trials shall take place in the parish where the offense has been committed, unless the venue is changed. If acts constituting an offense or if the elements of an offense occurred in more than one place, in or out of the parish or state, the offense is deemed to have been committed in any parish in this state in which any such act or element occurred.
The Official Revision Comment to Article 611 notes that the article does not specifically provide for continuing offenses, but explains: •
If an offense is continuing in the sense that part of the offense is committed in one parish and another part in another parish, it falls within the scope of this article. On the other hand, if the offense is continuing wholly within one parish alone there is no venue problem. If an offense is continuing in that it goes on in each parish, such as possession of the same narcotics in several parishes, there is no venue problem, since there is a complete offense in each parish.
Thus, if any element of the crime occurred in Jefferson Parish, then the court of that parish is a court of proper venue. Therefore, we must examine the elements of the crime with which the defendant was charged.
Here the defendant was charged with the distribution of cocaine. Thus, the applicable charge is a violation of the statutory provision “it shall be unlawful for any person knowingly or intentionally: (1) To produce, manufacture, distribute or dispense ... a controlled dangerous substance classified in Schedule II; ... ” La.R.S. 40:967(A).
By “Distribute" is meant “to deliver a controlled dangerous substance whether by physical delivery, administering, subterfuge, furnishing a prescription, or by filling, packaging, labeling or compounding the substance pursuant to the lawful order of a practitioner.” R.S. 40:961(13). “Delivery,” in turn, means “the transfer of a controlled dangerous substance whether or not there exists an agency relationship.” R.S. 40:961(9). The jurisprudence has further defined “deliver” as meaning “transferring possession or control.” State v. Martin, 310 So.2d 544, 546 (La.1975).
*776 This transfer of possession or control has not been limited to actual physical transfer between the parties. In State v. Lewis, 328 So.2d 75 (La.1976), in which an agent (Francisco) was used to transfer drugs to undercover agent Rogers, the court concluded:
“[1] However, as our summary of the evidence indicates, the delivery and distribution La.R.S. 40:961(9), (15), was between the defendant Lewis to the agent Rogers, even though Francisco himself may have been a principal in the transaction or may himself have been guilty of a distribution or a delivery.”
Conspiciously, the operative term “transfer” contained in the definition of delivery, R.S. 40:961(13) is nowhere qualified or limited, by the phrase “of possession” or otherwise. This rationale is consistent with the Louisiana Supreme Court holding in State v. Lewis, supra that “distribution” does not require actual physical transfer. Rather, it may be accomplished by the imposition of a third party.
In the instant case the trial court could reasonably conclude that the defendant “delivered” a controlled dangerous substance within Jefferson Parish via the imposition of the third party Associated Forwarders, Inc. who in turn transferred it to DHL Worldwide Courier Service in Jefferson Parish in furtherance of his attempt to have the drugs reach France. The presence of the cocaine in Jefferson Parish was a “continuing crime”, thus proper venue lies in any parish along its way. LSA-C. Cr.P. Article 611. Much like possession in several parishes would constitute a complete offense in each parish, distribution which initiates in one parish through a third party for delivery in some other parish constitutes a complete offense of distribution in each parish through which it passes.
Therefore, the trial judge properly dismissed the motion to quash.
MOTION TO SUPPRESS EVIDENCE
Defendant argues that the trial court erred in failing to suppress the cocaine which was unlawfully removed from the package deposited with Associated Forwarders. He contends the search is per se illegal because it does not fall under any of the jurisprudentially established exceptions justifying a warrantless search.
The Fourth Amendment of the United States Constitution which protects against unreasonable searches provides:
AMENDMENT IV — SEARCHES AND SEIZURES
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
This amendment has long been interpreted to protect individuals from unreasonable governmental actions. Its primary purpose is to restrain government authorities. It was not intended to protect against private trespasses. Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921); U.S. v. DeLaFuente, 548 F.2d 528 (5th Cir.1977); U.S. v. Jacobsen, — U.S. -, 104 S.Ct. 1652, 80 L.Ed.2d 85. Hence, the “search” conducted by the employees of D.H.L. was not subject to the limitations of the Fourth Amendment because they were not governmental employees.
We must next determine if the subsequent “search” by Kenner Police officers violated the provision of the Fourth Amendment. Governmental searches which follow a private search must be examined on its facts to determine if it violates the Fourth Amendment. Once the private search reveals the item the Fourth Amendment does not prohibit governmental use of the item as evidence. Walter v. United States, 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980); U.S. v. Jacobsen, — U.S. -, 104 S.Ct. 1652, 80 L.Ed.2d 85.
*777 One of the elements necessary to constitute an unreasonable search is the defendant’s expectation of privacy. Once the private search has revealed the item, the defendant’s expectation of privacy surrounding his package has greatly diminished, if not completely compromised. The employees of D.H.L. had already opened the cassette package and exposed the package of white powder, later found to be cocaine. The employees had already opened the cassette and exposed the package prior to contacting police officials. Once the private search had revealed a white powdery substance, believed to be cocaine, the officers did not violate any legitimate expectation of privacy that would trigger a violation of the Fourth Amendment. U.S. v. Jacobsen, supra.
CONCLUSION
The trial judge did not err in either, failing to grant the motion to quash or in refusing to suppress the evidence.
AFFIRMED.