SUSAN M. CHEHARDY, Judge.
|2On appeal, defendant challenges his conviction, multiple offender adjudication, and enhanced sentence. For the following reasons, we affirm defendant’s underlying conviction, vacate his multiple offender adjudication and enhanced sentence, vacate defendant’s underlying sentence and remand for resentencing.

Procedural History

On January 22, 2007, the Jefferson Parish District Attorney filed a bill of information charging Tracy L. Common with one count of possession of MDMA with intent to distribute, in violation of La. R.S. 40:966(A), and one count of possession of hydrocodone, in violation of La. R.S.40:967(C). Thereafter, defendant filed, inter alia, a motion to suppress evidence and a motion to quash the bill of information, which were both denied. The defendant sought supervisory review, which this Court denied after finding no *240 error in the trial court’s rulings. See, State v. Common, 08-K-567 (La.App. 5 Cir. 7/25/08) (unpublished writ disposition).
IsTrial in this matter commenced on May 25, 2010. After a three-day trial, the twelve-person jury found defendant, on count one, guilty of the responsive verdict of possession of MDMA, and, on count two, not guilty of possession of hydrocodone. Following his conviction, the defendant filed motions for post-verdict judgment of acquittal and new trial.
On June 4, 2010, the trial court sentenced the defendant to seven years at hard labor on count one for possession of MDMA. The trial court then denied the defendant’s motions for post-verdict judgment of acquittal and new trial.[1]
That same day, the State filed a bill of information alleging that defendant, in addition to his underlying conviction for possession of MDMA, had three prior felony convictions, and should be adjudicated and sentenced as a fourth felony offender. After some discussion, the defendant stipulated that he was a third felony offender. The trial court vacated the underlying sentence and imposed an enhanced sentence of ten years imprisonment at hard labor, without benefit of probation or suspension of sentence. This appeal follows.

Facts

Detective Brian Rico of the Gretna Police Department testified that, at 9:00 p.m. on December 31, 2006, he was off-duty and running errands in Westwego. Detective Rico, who was on 24-hour emergency call for his department, was driving an unmarked police vehicle equipped with police lights and siren.
As Detective Rico travelled on the West-bank Expressway, he observed a Chevy S-10 pickup truck traveling near him. Detective Rico testified that he noticed that the S-10 “swerv[ed] a little bit” for “quite a few blocks.” The S-10 then veered from the center lane into the left lane, towards a vehicle “causing that vehicle to go off the roadway slightly.” Eventually, the swerving truck went “all |4the way into the left lane” so Detective Rico moved into the middle lane of the highway. Detective Rico testified that, as he attempted to pass the S-10, it veered “straight towards my vehicle almost crashing into it ... I ended up swerving over to the right side, to the right lane of traffic.” The S-10 continued to “swerve directly in front of me positioning itself directly in front of my vehicle.”
Detective Rico immediately contacted Westwego police for assistance because he believed that something was wrong with the driver. He testified that he could not see into the vehicle to monitor the driver because the vehicle’s windows were heavily tinted. He decided to stop the S-10 “to protect the public so that the [driver] wouldn’t crash into somebody and possibly hurt or kill somebody.”
When Detective Rico, who has worked in Narcotics for most of his law enforcement career, decided to initiate the traffic stop, he pulled on his bulletproof vest marked “Police” in large lettering on the front and the back. Further, although Detective Rico was in civilian clothes, he was wearing his police badge around his neck and his service firearm.
Detective Rico testified that the heavy tint prevented him from assessing the number of occupants in the vehicle so he immediately “approached the vehicle instead of waiting for Westwego [police] to finally get there.” As Detective Rico approached the vehicle, he was able to see that the driver was the only occupant of the vehicle.
*241 When Detective Rico knocked on the driver’s side door, the driver immediately stepped out of the vehicle, which is unusual for a traffic stop. Because Detective Rico “didn’t know why all of a sudden [the driver] hopped out of the vehicle in that manner,” Detective Rico escorted the driver to the side of the truck to conduct a pat-down for officer safety. During this pat-down, as Officer Rico patted the driver’s right front pocket, the driver raised his right arm and |sbecame “very aggressive to where he turned in a right turning motion towards me.” Detective Rico immediately restrained then handcuffed the driver for officer safety.
Detective Rico then finished patting down the driver. During this pat-down, Detective Rico recovered a clear bag containing approximately 50 pills and United States currency totaling more than $1,100.00 from the defendant’s right front pants pocket. Detective Rico also recovered a single oval green pill from the defendant’s left front pants pocket.
Officer Brett Taylor of the Westwego Police Department testified that on the evening of December 31, 2006, he received a call from dispatch that an off-duty Gret-na police officer needed assistance on a traffic stop in Westwego. When he arrived at the scene, Officer Taylor saw Detective Rico’s vehicle parked behind a truck with its lights on. Officer Taylor testified that Detective Rico told him that he spotted the erratic driver “swerving in and out of lanes.” Detective Rico transferred the evidence that he had seized from the defendant to Officer Taylor then departed the scene.
Officer Taylor advised the driver of his constitutional rights as required under Miranda v. Arizona[2] and informed the driver that he was under arrest. After he placed the defendant under arrest, Officer Taylor observed a metal cylinder on defendant’s keychain, which, he testified, is commonly used to store knives, blades or other sharp instruments that can be used as weapons. When Officer Taylor opened the cylinder, he discovered three partial pieces of “circular shaped pills which tested positive for ecstasy.” Officer Taylor also noticed an odor of burnt marijuana emanating from the defendant’s vehicle. When Officer Taylor investigated, he recovered a bag containing green vegetable matter that field-tested | B'positive for marijuana and $2,000.00 in United States currency from the interior of the defendant’s vehicle. After hearing the testimony, evidence, and law, the twelve-person jury found defendant guilty of the responsive verdict of possession of MDMA and not guilty of possession of hydrocodone.
On appeal, defendant challenges his underlying conviction and multiple offender adjudication. Defendant presents two assignments of error: first, the trial court erred in failing to suppress the evidence, and second, the guilty plea to the habitual offender bill is invalid.

Law and argument

In his first assignment of error, the defendant contends that the trial court erred in denying his motion to suppress. More specifically, the defendant contends that the evidence in this case should have been suppressed because the evidence was seized after an illegal stop, detention, and arrest by an “off-duty, out-of-jurisdiction police officer.”[3]
*242 The Fourth Amendment to the United States Constitution and Article I, Section 5 of the Louisiana Constitution protect individuals from unreasonable searches and seizures. Notably, a search or seizure by a private citizen, acting in his capacity as a private citizen, is not prohibited by the Fourth Amendment because the amendment only protects individuals against actions by government agents. See, United States v. Jacobsen, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984); State v. Gentry, 450 So.2d 773, 776 (La.App. 5 Cir.1984), remanded, 462 So.2d 624, 628 (La.1985).
La.C.Cr.P. art. 214 allows the arrest of a person by a private person when the person arrested has committed a felony, whether in or out of the presence of the |7person making the arrest. See also State v. Jackson, 584 So.2d 266, 268 (La.App. 1st Cir.), writ denied, 585 So.2d 577 (La.1991). La. R.S. 14:96 defines aggravated obstruction of a highway of com merce as “the intentional or criminally negligent ... performance of any act, on any ... road, highway, thoroughfare, ... wherein it is foreseeable that human life might be endangered.” Further, a violation of La. R.S. 14:96 is a felony offense, punishable by imprisonment with or without hard labor for up to fifteen years. See, La. R.S. 14:2(A)(4) (felony is any crime punishable by death or imprisonment at hard labor.)
Driving “erratically” on an interstate highway constitutes a violation of La. R.S. 14:96. State v. Lavergne, 08-0044 (La.App. 1 Cir. 5/2/08), 991 So.2d 86, writ denied, 08-1459 (La.2/20/09), 1 So.3d 494. Further, La. R.S. 14:96 prohibits the “performance of any act” on a highway endangering human life. State v. Cox, 08-0492 (La.1/21/09), 5 So.3d 869, 873.
In State v. Lavergne, a volunteer firefighter from Texas observed the defendant driving erratically on Interstate 10 near Baton Rouge. Id. at 88. The firefighter’s passenger called local law enforcement while the firefighter engaged the sirens and strobe lights equipped on his personal vehicle and conducted a stop. Id. Soon afterwards, state troopers arrived and arrested the defendant for the misdemeanor offense of driving while intoxicated. The firefighter provided a written statement regarding his observations and left the scene. Id.
Our brethren on the First Circuit held that the defendant’s erratic driving was sufficient to justify a stop for the felony offense of aggravated obstruction of a highway of commerce, a violation of La. R.S. 14:96, which authorized a private citizen to make the arrest. Id. at 90-91. The Lavergne court also rejected the defendant’s argument that the firefighter was acting under color of state law when he stopped his vehicle. The court reasoned:
| s[The firefighter’s] explanation of the motivation for his actions (concern for public safety), and the fact that he never spoke with or was directed by law enforcement supports the trial court’s conclusion that he acted as a private citizen and not as a government agent when he stopped the defendant’s vehicle. The first governmental action occurred when [the state trooper] arrived, questioned the defendant in connection with the citizen’s report, and performed the field sobriety tests. Absent any governmental action in connection with the initial stop, the Fourth Amendment does not apply.
Id. at 89-90
In this case, as in Lavergne, Detective Rico observed the defendant driving errat *243 ically when his vehicle swerved across three lanes of traffic on the Westbank Expressway and nearly collided with Detective Rico’s vehicle. Detective Rico, who was off-duty and running errands, specifically stated that he observed the erratic driving for several blocks before deciding that defendant’s conduct was dangerous to public safety. Here, as in Lavergne, we see no error in the finding that a private citizen who witnessed aggravated obstruction of a highway is authorized to arrest a defendant pursuant to La.C.Cr.P. art. 214.
Once the arrest was affected, there are two exceptions to the warrant requirement that arise. First, evidence seized pursuant to a search by a private citizen, acting in his capacity as a private citizen, is not excluded under the Fourth Amendment because the amendment only protects individuals against governmental intrusion. United States v. Jacobsen, 466 U.S. at 113, 104 S.Ct. 1652. Thus, the pills confiscated by the private citizen would not be excluded under the Fourth Amendment.
Second, a search incident to a lawful custodial arrest is a limited exception to the constitutional prohibition against warrantless searches. See also State v. Bergman, 04-435 (La.App. 5 Cir. 10/12/04), 887 So.2d 127, 130-31.[4] The police may conduct a warrantless search of a person they have legally arrested in order to discover and seize evidence of the crime. State v. Doussan, 05-586 (La.App. 5 Cir.2/14/06), 924 So.2d 333, 342, writ denied, 06-608 (La.10/13/06), 939 So.2d 372. The police can search the arrestee’s person and the area within his immediate control in order to remove any weapons from his person and to prevent evidence from being destroyed. State v. Bergman, 887 So.2d at 129-30. Even though a person is not in physical possession of a drug, he may have constructive possession when the drugs are under that person’s dominion or control. State v. Schieffler, 00-1166 (La.App. 5 Cir. 2/13/01), 812 So.2d 7, 9, writ denied, 02-0712 (La.9/13/02), 824 So.2d 1188. Thus, once Officer Taylor arrived to take the defendant into custody, he was allowed to conduct a search of defendant’s person to prevent evidence of a crime from being destroyed and to remove weapons from the area within his immediate control.
Trial courts are vested with great discretion in ruling on a motion to suppress, and, consequently, the ruling of a trial judge on a motion to suppress will not be disturbed absent an abuse of that discretion. State v. Long, 03-2592 (La.9/9/04), 884 So.2d 1176, 1179, cert. denied, 544 U.S. 977, 125 S.Ct. 1860, 161 L.Ed.2d 728 (2005). Based on the foregoing, we see no abuse of the trial court’s *244 great discretion in its denial of defendant’s motion to suppress evidence. This assignment of error lacks merit.
|inIn his second assignment of error, defendant argues that his multiple offender adjudication is invalid. The defendant contends that the trial court did not adequately explain the nature of a multiple offender bill of information, and that he was not advised of his right to remain silent at any hearing that was held. We agree.
Louisiana jurisprudence has consistently held that, in a multiple offender proceeding, a trial court must advise a defendant of his right to a hearing at which the State is required to prove the allegations of the multiple offender bill of information, and of his right to remain silent. La. R.S. 15:529.1(D)(3);[5] State v. Perrilloux, (La. App. 5 Cir. 11/14/01), 802 So.2d 772, 777-778; State v. Rose, 97-943 (La.App. 5 Cir. 1/27/98), 708 So.2d 1093, 1094. If the record reflects that the defendant was advised of his rights by the trial court and/or his attorney, then the defendant intelligently waived his rights. State v. Francis, 98-811 (La.App. 5 Cir. 1/26/99), 727 So.2d 1235, 1239, writ denied, 99-0671 (La.6/25/99), 746 So.2d 597.
In general, the failure of the trial court to advise the defendant of his right to a hearing and his right to remain silent is not considered reversible error where the defendant’s habitual offender status is established by competent evidence offered by the State at a hearing, rather than by admission of the defendant. State v. Knight, 01-881 (La.App. 5 Cir. 2/13/02), 811 So.2d 947, 949. However, when the guilt of the defendant is proven by his own stipulation or admission to the habitual offender bill of information without having been informed of his right to a hearing or his right to remain silent, by either the trial court or his attorney, there is reversible error. Id.
In At the multiple offender hearing in question, defense counsel stated that the defendant would stipulate that he was a third felony offender. Although the trial court informed the defendant of his right to a hearing, the trial judge did not inform defendant of his right to remain silent. Further, we cannot say that defendant was advised of his right to remain silent as the record is devoid of a properly-executed waiver of constitutional rights with respect to defendant’s stipulation to the allegations of the multiple offender adjudication.
Because there was no competent evidence introduced at the hearing that the defendant was the same person that was convicted of two previous felonies, defendant’s stipulation without prior advisement of his rights constitutes reversible error. Therefore, we vacate defendant’s multiple offender adjudication and enhanced sentence and reinstate defendant’s underlying sentence.
Finally, the record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Wetland, 556 So.2d 175 (La.App. 5 Cir.1990). We note the following ei*rors, which require correction.
With respect to defendant’s underlying sentence, the trial court failed to rule on the defendant’s motions for post-verdict judgment of acquittal and new trial before sentencing the defendant on the underlying conviction and failed to observe *245 the mandatory twenty-four hour delay between ruling on the motion for new trial and sentencing.
La.C.Cr.P. art. 821 requires that a motion for post-verdict judgment of acquittal be filed and disposed of before sentencing. La.C.Cr.P. art. 853 requires that a motion for new trial be filed and disposed of before sentencing. La.C.Cr.P. art. 873 requires a twenty-four hour delay in sentencing after denial of a motion for |12new trial or in arrest of judgment, unless the defendant waives the delay. In this case, the defendant did not waive the delay.
Because we have vacated the enhanced sentence and reinstated the underlying sentence, these errors could affect a substantial right of the accused. La.C.Cr.P. art. 921. Accordingly, we vacate defendant’s underlying sentence and remand for resentencing. See, State v. Randolph, 409 So.2d 554 (La.1981); State v. Brooks, 00-106 (La.App. 5 Cir. 9/26/00), 769 So.2d 1242, 1246; State v. Wilson, 96-251 (La.App. 5 Cir. 10/1/96), 683 So.2d 775, 777.
In conclusion, based on the foregoing, we vacate defendant’s multiple offender adjudication and sentencing, and vacate defendant’s underlying sentence and remand for resentencing. In all other respects, defendant’s conviction is affirmed.

CONVICTION AFFIRMED; SENTENCE VACATED; MULTIPLE OFFENDER ADJUDICATION AND SENTENCE VACATED; REMANDED

. See error patent discussion, infra.

. Miranda v. Arizona, 384 U.S. 436, 444-45, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

. Although defendant raises several other issues in' this assignment of error, defense counsel raised only one argument for suppression in the lower court, specifically, the detaining party's lack of authority for effecting a traffic stop. Our jurisdiction is limited *242 to issues that are submitted to the trial court. U.R.C.A. 1-3.

. In State v. Bergman, the defendant was stopped after his truck was observed striking the guardrail five times. State v. Bergman, 887 So.2d at 128. The deputy conducted a patdown search of defendant, advised him of his Miranda rights, and placed him under arrest for careless operation of a motor vehicle. Id. at 129. The violation, a misdemean- or offense, was committed in the presence of the police officer subjecting the defendant to arrest without a warrant. Id. at 130. Then, the defendant advised the deputy that he had a handgun in his vehicle. The deputy went to the truck to retrieve the handgun. He first looked under the driver’s seat and found a pill bottle containing Xanax tablets. The gun was subsequently located between the console and the driver’s seat. Id. at 129. On appeal, the defendant argued the search of his automobile's interior exceeded the permissible scope of a search incident to an arrest because the vehicle was not within his immediate control once he was detained out of reach of the vehicle. This Court found that even though the defendant remained outside the vehicle by the curb, he was in close proximity to the vehicle and gun. Therefore, the deputy was justified in searching the vehicle and opening the containers incident to the defendant's lawful arrest. Id. at 131.

. La. R.S. 15:529.1(D)(3) reads in pertinent part that, "When the judge finds that [defendant] has been convicted of a prior felony or felonies, or if he acknowledges or confesses in open court, after being duly cautioned as to his rights, that he has been so convicted, the court shall sentence him to the punishment prescribed in this Section,_"