| STATE OF LOUISIANA | * | NO. 2020-K-0202 |
| VERSUS | * | |
| | | COURT OF APPEAL |
| CHRISTOPHER ROUSSET | * | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

\* \* \* \* \* \* \*


APPLICATION FOR WRITS DIRECTED TO
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 545-544, SECTION "J"
Honorable Darryl A. Derbigny, Judge
\* \* \* \* \* \*
**Judge Paula A. Brown**
\* \* \* \* \* \*
(Court composed of Judge Terri F. Love, Judge Paula A. Brown, Judge Tiffany G. Chase)

**LOVE J. CONCURS IN PART, DISSENTS IN PART AND ASSIGNS REASONS**

Leon Cannizzaro
Orleans Parish District Attorney
Donna Andrieu
Kyle Daly
Assistant District Attorneys
619 S. White Street
New Orleans, LA 70119

     COUNSEL FOR THE STATE

Stanislav Moroz
Orleans Public Defenders
2601 Tulane Ave., Ste. 700
New Orleans, LA 70119

     COUNSEL FOR DEFENDANT

     WRIT GRANTED; REVERSED;
     REMANDED.

     **JUNE 3, 2020**

PAB
TLC

This is a pre-trial criminal writ application.[1] The State seeks review of the district court's March 5, 2020 judgment granting Defendant's, Christopher Rousset, motion to suppress evidence and finding of no probable cause to arrest.[2] For the reasons set forth below, we grant the writ application, reverse the district court's judgment, and remand the matter for a hearing consistent with this writ opinion.

## FACTS/PROCEDURAL HISTORY

Defendant was charged, on May 8, 2019, by bill of information with sixty-five counts of possessing child pornography, violations of La. 14:81.1. The offensive pictures were on Defendant's cell phone. On May 10, 2019, Defendant appeared for arraignment and entered pleas of not guilty. In addition, counsel for Defendant filed an omnibus motion wherein Defendant sought to suppress statements and evidence, and moved for a preliminary examination. The motion did not specify the evidence Defendant sought to suppress, nor the specific grounds to support suppressing the evidence, and a finding of no probable cause.

A hearing on the motion to suppress and a preliminary hearing was held on December 13, 2019. The State called one witness to testify, the responding officer, Vanessa Adams, who was employed by the New Orleans Police Department ("NOPD"). In addition, the State introduced, filed, and admitted into evidence the search warrant, the arrest warrant, and footage of the body-worn camera of Officer Adams which depicted Officer Adams speaking to the complainant, Mr. Gilbert,

---

[1] Trial is currently set for June 29, 2020.

[2] The district court also denied the State's motion to re-open the hearing on the motion to suppress.

1

Defendant, and Clayton Babin, the person who discovered the inappropriate pictures.

Officer Adams, testified that she responded, on March 10, 2019, to a call at 3337 Ridgeway Boulevard located in New Orleans, Louisiana, regarding an incident involving indecent behavior with a juvenile. When the officer arrived and exited her police vehicle, Mr. Gilbert opened the door of a black truck and obtained a white cell phone. Mr. Gilbert informed Officer Adams that the day before, March 9, 2019, Charles Wolfe, Defendant's uncle, and Mr. Babin discovered the child pornography on Defendant's phone. Mr. Gilbert continued explaining that Mr. Babin picked up Defendant's cell phone to take a picture, and Mr. Babin discovered the offensive pictures when checking to see if the picture had taken. Mr. Gilbert stated that Defendant left the cell phone unattended, the cell phone did not have service, and the cell phone was not locked with a passcode. After discovering the inappropriate pictures, Mr. Babin, who did not know what to do about finding the images on Defendant's cell phone, gave the cell phone to Mr. Wolfe, who gave the cell phone to Mr. Gilbert. Mr. Gilbert informed Officer Adams that the cell phone belonged to Defendant, the roommate of Mr. Gilbert's nephew. Mr. Gilbert attempted to show Officer Adams one of the inappropriate pictures, but Officer Adams stated the picture was too dark. Mr. Gilbert, then, gave the cell phone to Officer Adams.

Officer Adams followed Mr. Gilbert to the residence of Mr. Gilbert's nephew, where Defendant was staying; it was not far from where Officer Adams met Mr. Gilbert. Upon arrival, Officer Adams approached Defendant, who

identified himself, and she read Defendant his *Miranda*[3] rights. Following, Officer Adams showed Defendant the cell phone she received from Mr. Gilbert, and she asked Defendant if the cell phone belonged to him. Defendant answered affirmatively. Officer Adams handcuffed Defendant, walked Defendant to her police vehicle, and informed Defendant why he was being arrested when they reached the police vehicle. In the police vehicle, Officer Adams viewed the pictures on Defendant's cell phone, and she testified that there were pornographic pictures of children dating back to 2002.

As part of the investigation, Officer Adams contacted Mr. Babin, the person who discovered the pictures, by phone, as he was on a boat with Mr. Wolfe. During the phone interview, Mr. Babin explained Defendant placed the cell phone on a welding trailer and walked away. Mr. Babin picked up the cell phone from the welding trailer to take a picture/video of a four-wheeler as it was being repossessed. After taking the picture/video, Mr. Babin checked the cell phone to see if the picture/video had taken. At that moment, he discovered pictures depicting child pornography. Mr. Babin stated that the cell phone was not locked with a passcode.

Officer Adams notified Detective Takeshia D. Fournier, an investigator for the NOPD, of the offensive photographs.

On March 27, 2020, an affidavit for a search warrant for Defendant's cell phone was prepared by Det. Fournier, and a search warrant was issued for Defendant's cell phone on that same date. In addition, Officer Fournier prepared an affidavit for arrest of Defendant, wherein she attested that Defendant's cell phone was searched pursuant to a search warrant, and she observed on the cell

---

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966).

phone "sixty-five images of children under the age of 13 years old engaged in sexual acts including but not limited to oral rape and/or posed in sexual manner where their genitals are the clear focus of the camera." Office Fournier also attested that on April 9, 2020, Lisa Maher, with the Bureau of Investigation Cyber Crime, unit "viewed and confirmed the images and identified sixty-five images as Child Pornography." An arrest warrant for Defendant was issued on April 9, 2019.

No testimony or evidence was presented by Defendant at the hearing.

Following the hearing, on January 31, 2020, the parties submitted memoranda. On March 4, 2020, the State filed a motion seeking to dismiss the motion to suppress for lack of particularity or to reopen the hearing to allow the State to introduce additional evidence. On March 5, 2020, the district court denied the motion to reopen the hearing, found no probable cause for the arrest, and granted Defendant's motion to suppress. The State objected and proffered additional testimony of Officer Adams. This writ application followed.

After the State filed its writ application and Defendant filed his opposition, on April 27, 2020, pursuant to this Court's order, the district court issued a *per curiam* wherein the issues that it addressed were set forth:

> At issue now before the [Appellate] Court is the trial court's rulings regarding the warrantless search of a cellular phone, the suppression of evidence obtained through that warrantless search, the suppression of statements made by the defendant, and the trial court's finding of no probable cause in this matter.

The district court granted the motion to suppress based on the warrantless search of the cell phone relying on *Riley v. California*, 573 U.S. 373, 401, 134 S.Ct. 2473, 2493 (2014), wherein the United States Supreme Court held that "a [search] warrant is generally required before such a search, even when a cell phone is

seized incident to arrest." The district court suppressed the "unlawfully obtained evidence." In addition, the district court, based on the failure of the officer to inform the Defendant of his charge, suppressed the Defendant's statement that the cell phone belong to him. Furthermore, the district court found, as a result of the warrantless search, that there was no probable cause for Defendant's arrest. The district court concluded that two of the State's arguments in defense of the warrantless search of the cell phone by Officer Adams—the cell phone was abandoned and/or a result of a search by a private party—were without merit, and not properly before the appellate court because these arguments were not raised in the district court.

## DISCUSSION

The State asserts that the district court erred by: (1) suppressing "the images of child pornography" seized from Defendant's cell phone; (2) suppressing Defendant's statement acknowledging that the cell phone belong to him; and (3) finding no probable cause for Defendant's arrest. For clarity, we discuss the alleged errors out of turn.

*Probable cause for arrest*

The State asserts the district court erred in finding no probable cause to support Defendant's arrest. We agree.

The standard of review for a trial court's ruling on probable cause to arrest is abuse of discretion. *State v. Hilton*, 16-0325, p. 3 (La. 3/24/16), 187 So.3d 981, 983 (wherein the Supreme Court held that the trial court abused its discretion in finding no probable cause for defendant's arrest).

The Louisiana Supreme Court in *State v. Simms*, 571 So.2d 145, 148-49 (La. 1990) explained:

5

Probable cause to arrest exists when the facts and circumstances within the officer's knowledge are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. *Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *State v. Wilson,* 467 So.2d 503 (La.1985). The determination of probable cause, although requiring something more than bare suspicion, does not require evidence sufficient to support a conviction. Probable cause, as the very name implies, deals with probabilities. *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). The determination of probable cause, unlike the determination of guilt at trial, does not require the fine resolution of conflicting evidence that a reasonable doubt or even a preponderance standard demands, and credibility determinations are seldom crucial in deciding whether the available evidence supports a reasonable belief that the person to be arrested has committed a crime. *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *State v. Rodrigue,* 437 So.2d 830 (La.1983). The determination of probable cause involves factual and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. *State v. Ogden and Geraghty,* 391 So.2d 434 (La.1980).

After reviewing Officer Adams' testimony and the body-worn camera video, the undisputed evidence showed that Mr. Babin and Mr. Gilbert saw the inappropriate pictures on Defendant's cell phone, and reported what they saw to Officer Adams. Thus, we conclude at the time of Defendant's initial arrest—even when excluding the alleged warrantless search of the cell phone by Officer Adams and Defendant's statement that the phone belong to him—the totality of information known to officer Adams' at the time arrest was sufficient to justify a person of ordinary caution in believing Defendant committed a crime.

In addition, an arrest warrant was issued for Defendant on April 9, 2019, based on the affidavit of Det. Fournier wherein she attested that Defendant's cell phone was searched pursuant to a search warrant,[4] and she observed on the cell

---

[4] As will be discussed *infra*, the district court was silent as to the validity of the search warrant; thus, evidence searched as result of the search warrant was not suppressed.

phone sixty-five images of children under the age of 13 years old engaged in sexual acts.

As a result, we find that the district court erred in finding no probable cause for Defendant's arrest.

*Motion to suppress*

The State asserts the district court erred in granting Defendant's motion to suppress.

This Court set forth the standard to be applied by the reviewing court when the issue is the district court's granting or denial of a motion to suppress in *State v. McClendon*, 13-1454, p. 6 (La. App. 4 Cir. 1/30/14), 133 So.3d 239, 245-46:

> In our review of a district judge's decision to deny or grant a petitioner's motion to suppress, we first look to the factual findings underlying the judge's decision. We grant great deference to these findings of fact, and will "not overturn those findings unless there is no evidence to support those findings." *State v. Wells*, 08-2262, p. 4 (La.7/6/10), 45 So.3d 577, 580 . . . .

> Applying the district court's supported findings of fact, we review the district judge's holdings on questions of law, including the reasonableness of government conduct under the Fourth Amendment, *de novo. See Id.*, 08-2262 at p. 4, 45 So.3d at 580; *State v. Pham,* 01-2199, p. 3 (La. App. 4 Cir. 1/22/03), 839 So.2d 214, 218. Should we find no reversible legal error in the court's reasonableness determination, we then review the district judge's decision to grant a motion to suppress for abuse of discretion, *see Wells,* 08-2262 at p. 5, 45 So.3d at 581, as the ruling as to whether the exclusionary rule is being properly applied under Fourth Amendment doctrine is a mixed question of law and fact. *See Pham,* 01-2199 at p. 3, 839 So.2d at 218. *See also State v. Lewis,* 11-0889, p. 11 (La. App. 4 Cir. 2/1/12), 85 So.3d 150, 157-158.

A review of the record shows the district court's granting of the motion to suppress was based on questions of law; thus, we conduct a *de novo* review.

*Defendant's statement*

7

The State contends the district court erred in suppressing Defendant's statement that the cell phone belonged to him. We agree.

As to this issue, the district court held:

> This Court further suppressed the defendant's statement admitting ownership of the cellular telephone as he was not properly advised of the reason for his detention or arrest at the time of the making of the statement in question, as required by the Article I [§ 13] of Louisiana State Constitution. The body-worn camera footage in the record clearly shows that the arresting officer refused to inform the defendant why he was being detained and failed to fully advise the defendant of his *Miranda* rights.

Louisiana Constitution Article 1, § 13 provides as follows:

> When any person has been arrested or detained in connection with the investigation or commission of any offense, he shall be advised fully of the reason for his arrest or detention, his right to remain silent, his right against self incrimination, his right to the assistance of counsel and, if indigent, his right to court appointed counsel.

*See also,* La. C.Cr.P. art. 218.1 ("When any person has been arrested or detained in connection with the investigation or commission of any offense, he shall be advised fully of the reason for his arrest or detention . . ."). Recently, in *State v. Alexander*, 19-00645, (La. 1/29/20) 2020 WL 500022, at *1,*3, the Supreme Court explained that the state bears the burden to prove a defendant's statement was free and voluntary:

> In order for an inculpatory statement or confession to be admitted into evidence, the State must affirmatively show that the statement was free and voluntary and not the result of fear, duress, intimidation, menace, threats, inducements, or promises. La. R.S. 15:451; La. C. Cr. P. art. 703(D); *State v. Anderson*, 2006-2987 (La. 9/9/08), 996 So.2d 973, 994. The State must also prove that the defendant was advised of his *Miranda* rights and voluntarily waived those rights. *Scarborough*, 256 So.3d at 266. A court will examine the totality of the circumstances surrounding the statement to determine its voluntariness. *State v. Manning*, 03-1982 (La. 10/19/04), 885 So.2d 1044, 1075.

A review of the body-worn camera video shows that Officer Adams approached Defendant and affirmed it was the Defendant. The Officer immediately administered Defendant his rights in accordance with *Miranda*, and Defendant inquired about the nature of the investigation. Officer Adams completed the *Miranda* warning and asked Defendant whether the phone belonged to him. Defendant replied affirmatively. Officer Adams handcuffed Defendant, walked Defendant to her police vehicle, and informed Defendant why he was being arrested when they reached the police vehicle. Because Defendant learned of the reason for his arrest at the scene immediately following his detention and arrest, we find the constitutional mandate—to be advised of the reason for detainment and/or arrest—was satisfied.

Moreover, we conclude that after Defendant was fully advised of his *Miranda* rights, Defendant's statement to Officer Adams that the cell phone belong to him was freely and voluntarily given. At the hearing, Officer Adams denied using force, coercion, threats or offers of anything of value or an advantage in exchange for Defendant's statement. Furthermore, as discussed *supra*, this Court finds Defendant's arrest was supported by probable cause; thus, Defendant's statement was not subject to exclusion as "fruit of the poisonous tree."[5]

Thus, we find that the district court erred in suppressing Defendant's statement that acknowledged the cell phone belonged to him.

---

[5] *See State v. Tarver*, 324 So.2d 382, 384 (La. 1975) (wherein the Supreme Court held that "[i]t is well settled that evidence obtained as a result of a constitutionally infirm arrest is inadmissible at trial, *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), based upon the theory that the evidence is the 'fruit of the poisonous tree.'").

*Images on cell phone*

The State asserts the district court erred in suppressing the images of child pornography found on Defendant's cell phone. The State contends there was a search warrant to search the cell phone, and Fourth Amendment protections were not triggered as to Officer Adams' warrantless search of the cell phone because Defendant's cell phone, which was left unattended by Defendant, was initially seized and searched by private citizens who gave the cell phone to law enforcement.

The district court, in granting the motion to suppress, wrote in pertinent part:

> As to the search of the cell phone in question, the state, in its own post hearing brief to the trial court admitted that the search of Mr. Roussett's phone was warrantless and unlawful. (State's Writ, Exhibit G, p. 3). *Riley v. California*, 573 U.S. 373, 401 (2014) holds that law enforcement must obtain a warrant prior to searching the contents of a cellular phone, even when such a phone is lawfully obtained by police incident to arrest. The Supreme Court recognized that cellular telephones are afforded heightened Fourth Amendment protections due to the large amount of private information often contained therein. There is no dispute that the investigating officer did not obtain or apply for a search warrant prior to the unlawful search that ultimately led to Mr. Roussett's arrest. As a result of that warrantless search, this Court suppressed the unlawfully obtained evidence . . . .

The Fourth Amendment of the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

In *McClendon*, 13-1454, p. 4, 133 So.3d at 244 (citations omitted), this Court explained that "[w]arrantless searches and seizures [by law enforcement] are *per se* unreasonable under the Fourth Amendment unless the governmental conduct is shielded by one of the few narrow exceptions to the warrant requirement." The *McClendon* Court continued "[i]n order for

10

the Fourth Amendment to guard a citizen from unreasonable state action, however, that person must have a reasonable expectation of privacy at the time of the search and seizure." *Id*.

The remedy for a Fourth Amendment violation is generally the exclusion of the unlawfully obtained evidence.[6] In *State v. Hunt*, 09-1589, p. 6 (La. 12/1/09), 25 So.3d 746, 752 (citing *Wong Sun v. United States*, 371 U.S. 471, 484, 835 S.Ct. 407, 416 (1963), the Supreme Court explained that the exclusionary rule "bars physical and verbal evidence obtained either during or as a direct result of an unlawful search or seizure."

With these principles in mind, we turn to the State's arguments.

---

[6] In *McClendon*, 13-1454, p. 5, 133 So.3d at 245, this Court cautioned:

> A Fourth Amendment violation alone, however, is not sufficient to justify the suppression of evidence recovered pursuant to unconstitutional searches and seizures. *See Herring v. U.S.,* 555 U.S. 135, 140, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009) (citing *Illinois v. Gates,* 462 U.S. 213, 223, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). If the prosecution fails to elicit adequate information, the district judge should still only grant a motion to suppress upon a finding that the application of the exclusionary rule furthers the interest protected by that constitutional guarantee. *See Hudson v. Michigan,* 547 U.S. 586, 593, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006); *Wong Sun v. U.S.,* 371 U.S. 471, 491-492, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *U.S. v. Ceccolini,* 435 U.S. 268, 278-279, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978).
>
> With regards to violations of the Fourth Amendment, "[t]he exclusionary rule should only apply where it "results in appreciable deterrence" of police misconduct. *Id.* at 141, 129 S.Ct. 695 (citing *United States v. Leon,* 468 U.S. 897, 909, 104 S.Ct. 3405, 82 L.Ed.2d 677 (2004)) (internal punctuation omitted). This requires "an assessment of the flagrancy of the police misconduct," and review of whether "the law enforcement officer had knowledge, or may be properly charged with knowledge, that the search was unconstitutional under the Fourth Amendment." *Id.* at 143, 129 S.Ct. 695. The district judge, prior to making his ruling on a motion to suppress, should then weigh the benefit of this deterrence against the social costs of the application of the exclusionary rule, namely letting guilty, possibly dangerous defendants go free and stifling truth seeking. *See id.* at 141, 129 S.Ct. 695.

*See also*, *State v. Lee*, 00-2429, p. 14 (La. App. 4 Cir. 1/4/01), 778 So.2d 656, 664 (citation omitted) (wherein this Court espoused that "[t]he exclusionary rule was designed to prevent the use of evidence tainted by flagrant police misconduct in order to deter law enforcement from violating the suspects' Fourth Amendment rights.").

First, the State asserts that the district court erred in suppressing the offensive photographs on Defendant's cell phone as there was a search warrant issued for the search and seizure of the contents of the cell phone. We agree.

In the *per curiam*, the district court clearly held the *warrantless* search of the phone was the basis for excluding the offensive photographs on Defendant's cell phone. The validity of the search warrant was not addressed and ruled on by the district court. Thus, pursuant to the search warrant, the search and seizure of the contents, including the offensive photographs, on Defendant's cell phone remain valid. As a result, we find that the district court erred to the extent the judgment suppressed the contents of Defendant's cell phone, including the images of the child pornography.

Second, the State asserts that the district court erred in suppressing the warrantless search of Defendant's cell phone by Officer Adams based on the holding in *Riley*. The State argues the cell phone was abandoned or left by Defendant, it was picked up and searched by private citizens, and a private citizen gave it to law enforcement; thus, the Fourth Amendment protections were not triggered.

We agree that the holding in *Riley* does not apply in this case.

In *Riley*, 573 U.S. 373, the issue was the reasonableness of the warrantless search of a cell phone that was seized and searched by law enforcement incident to the defendants' arrests. The United States Supreme Court held that "what police must do before searching a cell phone seized incident to an arrest is accordingly simple—get a warrant." *Id*. at 403. The *Riley* Court clarified that its holding was not that the information on a cell phone is immune from a warrantless search, and noted that other case-specific exceptions, such as "'the exigencies of the

12

situation,'" may still justify a warrantless search by law enforcement of a particular phone. *Id*. at 401-02.[7]

In *State v. Common*, 10-996, p. 6 (La. App. 5 Cir. 11/15/11), 78 So.3d 237, 242, (citing *United States v. Jacobsen,* 466 U.S. 109, 113-14, 104 S. Ct. 1652, 1656 (1984)), the Fifth Circuit explained that "a search or seizure by a private citizen, acting in his capacity as a private citizen, is not prohibited by the Fourth Amendment because the amendment only protects individuals against actions by government agents." *See also*, *State v. Lavergne*, 08-0044, pp. 4-5 (La. App. 1 Cir. 5/2/08), 991 So.2d 86, 89, (citing *United States v. Ginglen*, 467 F.3d 1071, 1074 (7th Cir. 2006)), wherein the First Circuit set forth useful criteria in determining whether an individual was acting as a private citizen or as an instrument or agent of the government). In *Jacobsen,* 466 U.S. at 119 (citations omitted), the United States Supreme Court held that a government agent's "viewing of what a private party had freely made available for [the government agent's] inspection did not violate the Fourth Amendment." The Court further explained that "[t]he Fourth Amendment is implicated only if the [governmental] authorities use information . . . to which the expectation of privacy has not already been frustrated." *Id*. at 117.[8]

In the case *sub judice*, the undisputed evidence reflects the day before Defendant was arrested, Mr. Babin discovered the images of child pornography while taking a picture with Defendant's cell phone. Mr. Babin, not knowing what

---

[7] The Supreme Court explained that "the exigent circumstance exception requires a court to examine whether an emergency justified a warrantless search in each particular case." *Id*. at 402 (citation omitted)(footnote omitted).

[8] *See United States v. Sherwin*, 539 F.2d. 1, 5 (9th Cir. 1976)(wherein the federal appellate court held there was no search within the meaning of the fourth amendment when a truck terminal manager, who was not acting as an instrument of the government, completed his search of a shipment which contained obscene materials, called the FBI, and the FBI's search was confined to viewing the materials displayed to them by the manager.)

to do with the cell phone, gave it to Mr. Wolfe, and Mr. Wolfe gave the cell phone to Mr. Gilbert. Mr. Gilbert also viewed the images. Both Mr. Babin and Mr. Gilbert reported that they saw the offensive images on Defendant's cell phone to Officer Adams. Mr. Gilbert gave Defendant's cell phone to Officer Adams, before Office Adams detained and/or arrested Defendant, and before she viewed the images on Defendant's cell phone. Thus, we conclude that the holding in *Riley* is inapplicable, and that the district court erred in its finding. As a result of this legal error, as well as the extent to which the district court's analysis was restrained by the holding in *Riley*, we vacate the district court's judgment and remand the matter to the district court to hold a suppression hearing only as to the issue of Officer Adams' viewing the contents of the cell phone prior to the warrant being issued. *See State v. Fitch*, 572 So.2d 677, 681 (La. App. 1st Cir. 1990)(citations omitted)(wherein the First Circuit held that "an appellate court may remand a case for a reopened suppression hearing in order to cure an erroneous ruling . . ."); *See also*, *State v. McMasters*, 18-0027, p. 6 (La. App. 4 Cir. 3/15/18)(unpub.), and *State v. Jackson*, 424 So.2d 997, 1000 (La. 1982).

## CONCLUSION

We find the district court abused its discretion in finding no probable cause for Defendant's arrest, and granting Defendant's motion to suppress. As a result, the State's writ application is granted, and the district court's judgment is reversed. In addition, we remand the matter to the district court for a hearing consistent with this writ opinion.

**WRIT GRANTED; REVERSED; REMANDED.**

14