MADELEINE M. LANDRIEU, Judge.
1 iAppellant, Robert Williams was convicted of two counts of armed robbery in violation of Louisiana Revised Statutes 14:64 and 64.3. In accordance with Louisiana Revised Statute 14:64, Mr. Williams was sentenced to 94 years at hard labor, without benefit of parole, probation, or suspension of sentence. Because the dangerous weapon used in the commission of the crimes was a firearm, pursuant to Louisiana Revised Statute 14:64.3, he was sentenced to an additional five years, to be served consecutively to the sentence for armed robbery. Mr. Williams filed this appeal contending that the trial court erred in denying his motion for a new trial and that the sentence imposed is excessive. For the reasons that follow, we affirm Mr. Kenney’s conviction, vacate his sentence, and remand for resentencing.
PROCEDURAL HISTORY
Mr. Williams was convicted of two counts of armed robbery, each committed while he was in the possession of a firearm. He was initially sentenced on each count to ninety-nine years at hard labor without benefit of parole, probation, or suspension of sentence. These sentences were ordered to run concurrently. This Court affirmed his convictions on appeal; however, his sentences were vacated, and the case was remanded for resentencing as the record |2failed to reflect whether the trial court complied with the provisions of Louisiana Revised Statute 14:64.3. State v. Williams, 2009-0964, unpub. (La.App. 4 Cir. 11/24/10), 2010 WL 8972035; writ denied, 2010-2837 and 2010-2864 (La.6/3/11), 63 So.3d 1005-1006. Louisiana Revised Statute 14:64.3 requires that a defendant be sentenced to an additional five years imprisonment when the dangerous weapon used in the commission of an armed robbery is a firearm.
*322 Prior to remand, while the appeal was pending, Mr. Williams filed a pro se Motion for New Trial. The trial court denied this motion on the grounds that the motion did not set forth any facts and circumstances that would merit granting a new trial. Defendant subsequently sought supervisory review of the denial of his Motion for New Trial. This Court did not consider Mr. Williams’ writ, noting that Mr. Williams could raise his claims on post-conviction relief once his appeal became final. State v. Williams, 2009-0964, unpub. (La.App. 4 Cir. 11/24/10).
Thereafter, Mr. Williams filed a series of other motions, all of which were denied by the trial court. Because Mr. Williams’ appeal was still pending at the time the trial court ruled on his motion for new trial and subsequent pleadings, the trial court lacked jurisdiction to hear the motions and could only hear them on remand. See La.C.Cr.P. art. 853.
Following remand, Mr. Williams renewed his motion for new trial and requested that it be treated as an application for post-conviction relief. Thereafter, Mr. Williams filed an application for “instanter subpoena duces tecum in forma pauperis,” requesting certain cell phone records. On August 25, 2011, Mr. Williams appeared for resentencing. On that date counsel for Mr. Williams filed a “Motion 1) to Reurge All Previously Filed Pro Se Motions and Grounds for New Trial Not Properly Ruled Upon, if any, and 2) to Supplement with Additional |sGrounds under C.Cr.P. 851(5), and 3) for Additional Subpoena Duces Tecum to Issue, with Request for Delay in Resentencing to Allow Responses to All Pending Defense Subpoenaes [sic] and Effective Assistance of Counsel.” Attached to the motion was an application for a subpoena duces tecum.
The trial court denied Mr. Williams’ request to continue his resentencing. The court noted that it had already denied defendant’s motion for new trial. After Mr. Williams asserted that it may have been improper to have ruled on his motions while his appeal was pending, the trial court re-issued its earlier ruling and again stated that Mr. Williams’ claims were more properly raised by an application for post-conviction relief.
On August 26, 2011, the court resen-tenced Mr. Williams to ninety-four (94) years at hard labor without benefit of probation, parole, or suspension of sentence for the violation of Louisiana Revised Statute 14:64. In accordance with Louisiana Revised Statute 14:64.3, the court then imposed a sentence of five years at hard labor without benefit of probation, parole, or suspension of sentence, to be served consecutively to the previously imposed sentence. Counsel for Mr. Williams objected to the sentence as being excessive and asked the court to consider Mr. Williams’ previously filed pro se motion to reconsider sentence. The trial court denied this motion.
On May 8, 2012, after the instant appeal was lodged, Mr. Williams filed a motion in this Court to remand the matter to the trial court for a hearing on the motion for new trial. That motion is denied. All claims asserted in the motion are addressed in this opinion.
^ASSIGNMENTS OF ERROR
1. Mr. Williams contends that the trial court erred in denying his re-urged motion for new trial without holding a hearing and without granting his requests to issue subpoenas, and that the trial court abused its discretion in refusing to postpone his re-sentencing.
2. Mr. Williams contends that his sentence is excessive.
*323 FACTS
In State v. Williams, this Court reported the facts of the case as follows:
Defendant was convicted for the January 21, 2008 armed robberies of Paul Currer and Andrew Francis, while defendant was armed with a firearm.
New Orleans Police Department Senior Police Dispatcher Stephanie Briscoe identified an audiotape of a 911 call from Andrew Francis about an armed robbery with a gun. The call was received at 8:54 a.m. on January 21, 2008. The tape was played for the jury.
Paul Currer testified that on January 21, 2008, he was working with a group from his Alexandria, Virginia church with the Episcopal Diocese of Louisiana to repair homes in the New Orleans area damaged during Hurricane Katrina. Currer and another individual, Andy Francis, picked up some framing lumber that day in a pickup truck and drove it to a home being repaired. Both men went inside, but Francis left to begin carrying in the lumber. Currer heard someone outside say “stop.” He walked to the front room and observed defendant pointing a semiautomatic handgun at Francis. Currer said he looked at defendant and, because defendant had a pretty clean cut appearance, Currer initially thought defendant was a neighbor who perhaps thought that Currer and Francis had gotten into the house illegally. He told defendant they were there to drop off lumber and would be happy to leave if he wanted them to. At that point defendant told them to back up, and they backed up into the inner room. He told the men that they did not come into his neighborhood unless they paid him money. Defendant ordered the men to give them their stuff. Francis tossed his wallet at defendant’s feet; defendant picked it up and asked if the fifteen dollars inside was all he had. Currer told defendant not to worry, that he had money. He took out his wallet and put about one hundred dollars in cash at defendant’s feet. Defendant asked if that was all they had, and they replied in the affirmative.
Defendant again told the men not to come into his neighborhood unless they paid money. He ordered the two to stay there, not to do anything stupid, and not to call the police. Currer and | ^Francis left shortly thereafter and drove away. Francis contacted his boss, and they were directed to a McDonald’s Restaurant where police were waiting for them. He described defendant to the officers as being about 5'8" to 5'9" tall, in his late twenties, with short hair. Several hours later police contacted him, and he went to a location where officers had an individual in custody. Currer identified defendant when he got to within approximately thirty yards of him. He said he was absolutely certain defendant was the person who robbed him.
Currer said the lighting was good; that it was a bright clear day; and that the lighting was also good after defendant backed them further into the residence. He said defendant had a pretty clean cut appearance, with short hair. Defendant was wearing a white jacket with red stripes on the top, extending down the sleeves. He said it was open, and he could see some type of writing on the inside. Currer identified a jacket shown to him as the one defendant was wearing at the time of the robbery. The jacket presented to him in court had stripes on the shoulders and sleeves and writing on the inside.
Currer testified that he was absolutely convinced defendant was the person who robbed him. He conceded on recross examination that at some point in *324 his life he had mistakenly seen someone and believed it was a friend, only to realize it was not.
Andy Francis, a college student from Iowa who, on the day of the robbery, was working with the Episcopal Diocese disaster response leading crews rebuilding homes in New Orleans, testified similarly to Paul Currer. He recalled it being pretty light outside, and that it was about 8:30 a.m. He described the robber as being approximately six feet tall, weighing about two hundred pounds, wearing a white zippered jacket with red writing across it, dark baggy pants, and dark shoes. The robber was clean cut with short hair. Francis identified defendant in court. Francis stated that defendant was about thirty feet away when defendant first got out of the police car at the one-on-one identification procedure. He said that at that time he was pretty sure defendant was the robber, but was not one hundred percent certain. When the officers moved defendant to about fifteen feet away, he still was not one hundred percent certain. Francis said defendant was kind of hunched over. Francis positively identified defendant after police officers told defendant to stand up straight. Francis said he was one hundred percent certain defendant was the person who robbed him. He said defendant had the same face, the same build, was clean cut, and was wearing a white jacket with, a zipper and red writing, baggy pants, and dark shoes. Francis identified the white jacket with the red writing across the front of it. Francis admitted that he did not notice that the jacket the robber was wearing had. red stripes going down the sleeves, like the one in evidence.
IfiOn cross examination Francis conceded that, although he had described to police the pants the robber was wearing as baggy and black, the ones in evidence were not black or extremely dark colored. Nor did he notice embroidery on the fly area and cuffs of the jeans in evidence. Francis said he was more focused on the gun. Francis stated that the lighting in the room of the residence where he was robbed came from four windows, two on each side of the room. Francis confirmed that when the police came to pick him up to view defendant, an officer told him they had somebody who fit the description. Defendant was handcuffed during the viewing. Francis confirmed that there were ten to fifteen police cars at the viewing and an estimated thirty to thirty-five police officers, all surrounding defendant, with three of four officers standing with him. He said Currer was removed from his presence before Francis made an identification of defendant. He confirmed that the police essentially told him that unless he was one hundred percent certain defendant was the person who robbed him, defendant would not be prosecuted. Francis confirmed that he was sure that in his lifetime he had seen someone he had mistakenly believed was a friend.
New Orleans Police Detective Mary Colon[1] conducted the follow-up investigation in the robbery of Paul Currer and Andy Francis. She took the victims’ statements at a McDonald’s restaurant, then drove to the scene and canvassed the area for suspects, having other units do the same. She had returned to the station to type her report when she was *325 notified that officers had a suspect that fit the description. She was present when the two victims viewed the defendant, each positively identifying him as the person who robbed them. She recalled that defendant was wearing dark blue denim jeans and a white sweatshirt with red writing on it. She said he did not have anything under the sweatshirt at the time the identifications were made. But she said he had been wearing a white undershirt and red tee-shirt under the sweatshirt.
Det. Colon confirmed that after she spoke to the victims she broadcast a description of the robber as a light complected black male, five feet eight inches to five feet nine inches tall, twenty-eight to thirty years old, weighing approximately one hundred and eighty pounds, wearing dark baggy jeans and a white sweatshirt with red writing. She confirmed on redirect examination that the 911 operator’s incident log did not reflect that Andy Francis had reported the robber as a light-skinned black male. Det. Colon confirmed that the victims did not say anything about yellow and red stitching on the pants |7defendant was wearing at the time he was arrested. She was shown the jacket defendant was wearing at the time he was arrested, and she described the writing on it as looking like red and black. Det. Colon confirmed that neither of the victims said anything about a red stripe on the jacket running from the collar to the wrist. She confirmed that, in her opinion, the red stripes covered a greater area of the garment than any red writing. The victims described dark shoes, with no mention of white soles. Det. Colon said there were perhaps eight or nine police ears at the location where the victims made their identifications. She did not recall Andy Francis say: “I cannot tell you that’s him.” (November 5, 2008 trial transcript, p. 27). She did not recall Francis telling her to make defendant stand up straighter. She did not recall defendant being in shackles, only handcuffs. She recalled Paul Currer trying to identify defendant as soon as he got out of the vehicle, before he had walked closer to defendant.
Det. Colon confirmed on cross examination that neither victim mentioned to her that they believed the robber was left-handed. Neither said anything about the robber stuttering, although both clearly said he told them that they did not come into his neighborhood without paying him. The detective confirmed that the address recorded as defendant’s home address was uptown, and that the robbery occurred on Duels Street around North Broad Street. Defendant was arrested on North Prieur Street, approximately eight blocks from the McDonald’s restaurant on Elysian Fields Avenue and Interstate 10 where the victims identified him. Det. Colon confirmed that upon arresting defendant she noted that he had a gold tooth. She confirmed on redirect examination that she asked the victims whether or not the robber had gold teeth, and that they said they did not know. She said the victims were shaken up. Det. Colon confirmed that defendant had no money or a gun on his person when arrested. Det. Colon said she did not look at defendant’s cell phone to see what kind of activity had been taking place on that cell phone at about the time of armed robbery.
Bobbie Williams, defendant’s mother, testified that she sat overnight for an elderly man who lived near the intersection of Audubon and Broadway Streets. On January 21, 2008, she got off work at 8:05 a.m. or 8:10 a.m. and went home. Williams identified a copy of a paycheck *326 purportedly issued to defendant, dated “the 18th.” (November 5, 2008 trial transcript, p. 78). She testified that the check had not been cashed at the time defendant was arrested. Defendant came in with someone named “Diego” between 8:10 and 8:15 a.m. They all ate some leftover soup. She said they finished eating around 9:00 or 9:30 a.m., and that defendant left the house between 9:45 and 10:00 a.m. Williams recognized the clothes defendant was wearing at the time he was arrested — his jacket, shirt, pants and belt — and said he was wearing them when he left the house that morning after breakfast. Williams denied that she would commit perjury or make up Ra false paycheck story. Four individuals came into the courtroom and were identified by Ms. Williams — two of her granddaughters, Lakenia and Lashaye Williams; her niece, Alicia Bester; and Charles Yates, defendant’s friend. Williams confirmed that all four of these individuals were at her home on the morning of January 21, 2008, with defendant.
Alisa Bester, defendant’s cousin, testified that she first saw defendant around 6:30 or 7:00 a.m. on January 21, 2008, at her aunt’s house trailer, which was located at 9001 Belfast Street. She was talking to defendant’s mother at about 8:20 a.m. and heard her fussing at someone, whom defendant’s mother identified to her as defendant, for not bringing a bowl back to her residence. Bester later saw defendant at his mother’s home, where she went to get some leftover soup. Bester went there about 8:30 a.m. When asked who was there, she said it was Lakenia and Lashaye Williams, Charles Gates or Yates, and herself. She did not say defendant was there when she got there, or when he came in. She said he left around 9:25 a.m. She was asked why she went to see defendant. Bester replied that it was because she asked him for a couple of dollars; that she always asked him for money; and that he always gave her money. She said he worked at the river, with Coastal Cargo. Bester admitted having a prior conviction for possession of marijuana. Asked on redirect examination where defendant was at 8:30 a.m. on January 21, 2008, Bester replied that he was at his mother’s home eating a bowl of soup.
Williams, unpub., 2009-0964, pp. 1-4.
ERRORS PATENT
Upon review of the record, this Court has identified an error patent with regard to the sentence imposed on Mr. Williams. Louisiana Code of Criminal Procedure article 879 provides that if a defendant is convicted of an offense and sentenced to imprisonment, the court shall impose a determinate sentence. If a record fails to reflect that a defendant was sentenced on each count, the sentence is invalid and the case must be remanded for resentencing. State v. Bessonette, 574 So.2d 1305, 1306 (La.App. 3 Cir.1991).
Mr. Williams was convicted of two counts of armed robbery, requiring the imposition of two separate sentences. The record reflects that on August 26, 2011, the trial court sentenced Mr. Williams to serve ninety-four years imprisonment at 19hard labor. Mr. Williams was also sentenced to serve five years imprisonment pursuant to Louisiana Revised Statute 14:64.3, which the court ordered to be served consecutively to the previously imposed sentence. However, the record fails to reflect that Mr. Williams was sentenced on each count for which he was convicted.
Accordingly, Mr. Williams’ sentences of ninety-four years and five years are invalid *327 and the case must be remanded for resen-tencing.
ASSIGNMENT OF ERROR # 1 — MOTION FOR NEW TRIAL
Mr. Williams contends that the trial court erred in denying his re-urged motion for new trial without holding a hearing and without granting his requests for subpoenas to obtain information in support of the motion. Mr. Williams also maintains that the trial court abused its discretion in refusing to postpone his re-sentencing until after he could obtain the information in support of his motion for new trial pursuant to the subpoenas.
Mr. Williams contends that he is entitled to a new trial pursuant to Louisiana Code of Criminal Procedure article 851(3). Article 851(3) provides for the granting of a new trial when a defendant discovers new and material evidence, which despite the exercise of reasonable diligence was not discovered before or diming the trial, and which would probably have changed the guilty verdict if it had been discovered.
Mr. Williams’ motion does not contend that this “newly discovered evidence” could not have been discovered before or during his trial. Just as this court noted on appeal and in response to Mr. Williams’ previous application, the trial court denied Mr. Williams’ motion for new trial on the basis that his claims were more properly raised on post-conviction review.
| mThis matter was remanded to the trial court to resentence Mr. Williams in compliance with Louisiana Revised Statute 14:64.3, which the trial court did. There is nothing to suggest that the trial court abused its discretion in denying Mr. Williams’ motion for new trial or his motion to continue his resentencing. This assignment of error lacks merit.
ASSIGNMENT OF ERROR # 2 — EX-CESSIVENESS OF SENTENCE
In this assignment or error, Mr. Williams contends his sentence is excessive. He does not suggest that in bringing his sentence into compliance with the provisions of Louisiana Revised Statute 14:64.3 his sentence became excessive. Rather, Mr. Williams simply asserts that his current sentence is excessive, noting that maximum sentences are generally reserved for the most egregious offenders.
In his original appeal, Mr. Williams did not allege that the sentence imposed was excessive. Thus, the State contends that whether Mr. Williams’ sentence is excessive is beyond the scope of the present appeal. We disagree. Citing Louisiana Constitution article 5, § 5(D)(2) and Louisiana Code of Criminal Procedure article 912.1, the Louisiana Supreme Court held that when a defendant’s sentence is vacated and the matter is remanded for resentencing, the defendant has the right to appeal the new sentence. La.C.Cr.P. art. 912.1; State v. Lewis, 350 So.2d 1197, 1198 (La.1977).
The sentencing range for a conviction of armed robbery is ten to ninety-nine years at hard labor, without benefit of parole, probation, or suspension of sentence. La. R.S. 14:64(B). When the dangerous weapon used in the commission of the crime of armed robbery is a firearm, an additional consecutive penalty of five years shall be imposed. La. R.S. 14:64.3.
|nMr. Williams was sentenced to ninety-four (94) years at hard labor without benefit of probation, parole, or suspension of sentence. Because Mr. Williams used a firearm in the commission of the crime, in accordance with La. R.S. 14:64.3, the trial court also imposed a sentence of five years at hard labor without benefit of probation, parole, or suspension of sentence, to be served consecutively.
*328 Louisiana Code of Criminal Procedure article 881.4(D) states, “The appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed.” The trial court is given wide discretion in imposing sentence and a sentence should not be disturbed absent an abuse of discretion. State v. Square, 433 So.2d 104, 110 (La.1983).
In State v. Smith, 2001-2574, p. 6 (La.1/14/03), 839 So.2d 1, 4, the Supreme Court set forth the standard for evaluating a claim of excessive sentence, directing that even if a sentence is within statutory limits, it can be reviewed for excessiveness. Article I, § 20 of the Louisiana Constitution of 1974 provides that no law shall subject any person to excessive punishment. A sentence is considered unconstitutionally excessive when the punishment imposed is grossly disproportionate to the severity of the offense or constitutes nothing more than needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355, 357 (La.1980). A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. State v. Cann, 471 So.2d 701, 703 (La.1985). The relevant question for appellate review is not whether another sentence might have been more appropriate, but whether the trial court abused its broad sentencing discretion. Smith, pp. 6-7, 839 So.2d at 4.
In State v. Batiste, 2006-0875, p. 18 (La.App. 4 Cir. 12/20/06), 947 So.2d 810, 820, this Court further explained that the role of the appellate court in reviewing a claim of excessive sentence is to determine whether the trial court adequately complied with the statutory guidelines enunciated in Louisiana Code of Criminal Procedure article 894.1, as well as whether the facts of the case warrant the sentence imposed. If there is adequate compliance with article 894.1, the reviewing court must determine whether the sentence is too severe in light of the particular defendant and the circumstances of the case, keeping in mind that maximum sentences should be reserved for the most egregious offenders. Id.
Mr. Williams contends that he presented sufficient mitigating factors to warrant a sentence less than the sentence imposed. At his sentencing, Mr. Williams noted that he has the support of his family and that he had a job prior to his arrest. Since his incarceration, he has obtained his GED and is enrolled in carpentry school. While all of this may well be true and may speak to mitigation, the record reflects that Mr. Williams has previous convictions for manslaughter and possession of cocaine. When discussing the manslaughter conviction at the sentencing hearing, the trial court learned that Mr. Williams was initially charged with second degree murder. Following a mistrial and the death of his co-defendant, Mr. Williams pled guilty to manslaughter, and was sentenced to ten years at hard labor. While he was on parole for that offense, Mr. Williams committed the instant offense.
The transcript from Mr. Williams’ original sentencing reflects a lengthy and detailed consideration of the circumstances of the armed robbery. The trial court took particular note of the gravity of Mr. Williams’ conduct in robbing “Good Samaritans” who had traveled to New Orleans to assist in the rebuilding efforts 113foil owing Hurricane Katrina. In fact, the trial court gave a nine-page discourse on the egregious nature of the crime. In light of Mr. Williams’ previous criminal history and the circumstances of the offense, we find that the trial court did not abuse its discretion in its sentencing of Mr. Williams. See State v. Wilson, 452 So.2d 773 (La.App. 4 *329 Cir.1984); State v. Douglas, 389 So.2d 1263 (La.1980).
CONCLUSION
For the foregoing reasons, we affirm Mr. Williams’ convictions. However, we find that Mr. Williams’ sentences of ninety-four years and five years are invalid and remand with instructions to correct the sentences by sentencing Mr. Williams on each count charged, in compliance with Louisiana Revised Statutes 14:64 and 14:64.3. Mr. Williams’ Motion to Remand for a hearing on his motion for a new trial filed in this Court on May 8, 2012 is denied.
CONVICTION AFFIRMED; SENTENCE VACATED AND REMANDED FOR RESENTENCING.

. Although Det. Colon’s last name is spelled "Cologne" in the trial transcript, she spelled it “Colon” throughout her supplemental police report that is contained in the record. (Rec., pp. 136-137).