PAUL A. BONIN, Judge.
.h Jerome Gibson’s most recent post-conviction filing in the district court is styled “Motion to Correct an Illegally Adjudicated Sentence Citing Louisiana Criminal Code of Procedure Article 882.” On January 14, 2014, Mr. Gibson pled guilty to the crime of being a convicted felon in possession of a firearm, was adjudicated a second-offender under the Habitual Offender Law, and was sentenced to serve ten years at hard labor. In acting on the motion, the district judge summarily denied the motion because, as was noted in the minute entry, “the claims raised are without merit [and][f]urther, the defendant has failed to provide evidence to support same.” Beyond that commentary, the district judge, however, did not provide a specific analysis or explanation of his ruling.
Mr. Gibson then filed an application for supervisory review with us. Because of the history of his filings with us (see Part II, post) and other concerns, we directed that a certified copy of the record be filed with us and that the district |aattorney file any opposition he may have to the application.' Having the record and the opposition, we grant the writ application. But, upon our de novo review of the district judge’s ruling, we conclude that the result of the district judge’s ruling is legally correct and, thus, deny Mr. Gibson any relief on his motion.[1]
We explain our decision in greater detail below.
I
Two preliminary comments are in order.
First, as distinguished from an application for post-conviction relief, a motion to correct an illegal sentence is never time-barred. See La.C.Cr.P. art. 882 A (“An illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review.”); State v. Campbell, 03-3035, p. 5 (La.7/6/04), 877 So.2d 112, 116. See also State ex rel. Smith v. Criminal Dist. Court, 93-1937 (La.11/18/94), 646 So.2d 367 (holding that the two-year limitations period for applications for post-conviction relief under La.C.Cr.P. art. 930.8 does not apply to motions ■ to ■ correct illegal sentences under Article 882); State v. Augustine, 555 So.2d 1331, 1334 (La.1990) (“A sentence illegally imposed, even one not constitutionally excessive, is null ...”). And a prisoner, like Mr. Gibson, is'permitted to raise the motion even long after his conviction and sentence have becoine final. See State v. Edwards, 13-2497, p. 1 (La.2/21/14), 133 So.3d 1261, 1261-62; State ex rel. Burger v. State, 95-1578 (La.11/3/95), 661 So.2d 1373. See also La. C.Cr.P. art. 882 cmt.(a). (“The phrase ‘at any time’ |amakes clear the court’s authority to make a .correction after, the defendant has begun to serve [his] sentence.”); La. C.Cr.P. art. 922.
*135 And, second, whether a particular sentence is legal or illegal is a question of law. Thus, a district judge’s legal determination of the legality or illegality of a particular sentence, like any other question of law, is not entitled to our deference. See, e.g., State v. Hampton, 98-0331 (La.4/23/99), 750 So.2d 867, 884; State v. McClendon, 13-1454, p. 6 (La.App. 4 Cir. 1/30/14), 133 So.3d 239, 245. Thus, we review the district judge’s ruling de novo. See State v. Mead, 14-1051, pp. 1, 7 (La. App. 4 Cir. 4/22/15), 165 So.3d 1044, 1046, 1049. Cf. State v. Smith, 93-0402, p. 3 (La.7/5/94), 639 So.2d 237, 240 (a district judge has complete discretion to impose any sentence within the statutory sentencing range that is not constitutionally excessive) (emphasis added).
II
Despite the relative recency of Mr. Gibson’s conviction and sentencing, this is the fifth time that he has filed an application for supervisory review with us.
In # 2014-K-0875, Mr. Gibson sought and obtained a writ of mandamus to compel the district judge (the predecessor of the current judge) to act on his pending “motion to vacate, annul or set aside an illegal adjudicated sentence under the wrongful application of Louisiana Revised Statute 15:529.1.” See State v. Gibson, unpub., 14-0875 (La.App. 4 Cir. 9/2/14).
In # 2014-K-1135, Mr. Gibson applied for a supervisory writ in which application he complained about the predecessor district judge’s method of | ¿notifying him of the denial of his aforementioned motion as well as the denial itself and of that judge’s refusal to act on his motion for production of his Boykin and sentencing transcript. We granted his application in part, ordering the predecessor judge to act on his motion for production, but denied any other relief to him, indicating that his. claim was time-barred. See State v. Gibson, unpub., 14-1135 (La.App. 4 Cir. 11/12/14).
In # 2015-K-0467, Mr. Gibson sought supervisory review for the district judge’s denial of his “motion for correction of an illegal sentence pursuant to C,Cr.P, art. 882.” The court’s minute entry noted that the motion was denied “as the claims raised are without merit.” We denied the application, commenting that we find “no error, in the judgment of the district court denying [Mr. Gibson’s] motion for .correction of an illegal sentence on April 6, 2015.” State v. Gibson, unpub., 15-0467 (La.App. 4 Cir. 05/26/15).
In # 2015-K-0996, Mr. Gibson applied for supervisory review because the district judge had summarily denied his application for post-conviction relief.[2] In that application, he asserted that the guilty plea to the predicate offense charged in the multiple bill was not knowingly, voluntarily and intelligently.:entered and could not be used for sentencing-enhancement purposes. He also asserted that his counsel was ineffective during the plea-bargaining negotiations. We peremptorily denied the application, commenting that we found “no error” in the district judge’s ruling. See State v. Gibson, unpub., 15-0996 (La.App. 4 Cir. 09/25/15), cert. app. pending 2015-KH-1857 (La.). And, importantly for our purposes, neither of Mr. Gibson’s assertions there is cognizable in post-con *136 viction proceedings. The failure to challenge before multiple-bill sentencing an in-firmed predicate conviction because of an insufficient Boykinization precludes a collateral attack on the sentence imposed. See Mead, 14-1051, p. 7, 165 So.3d at 1049. And an ineffective-assistance-of-counsel-at-sentencing claim must be raised on direct appeal and cannot be asserted collaterally in'post-conviction proceedings. See State v. Cotton, 09-2397, p. 2 (La.10/15/10); 45 So.3d 1030, 1031 (per curiam). See also State v. Boyd, 14-0408, p. 8 (La.App. 4 Cir. 2/11/15), 164 So.3d 259, 264.[3]
Ill
We now turn to a review of the history of Mr. Gibson’s criminal felony convictions. At the time of his arrest for the charge of convicted felon in possession of a firearm,[4] Mr. Gibson had been released from the penitentiary and was on parole.
IfiMr. Gibson, who was born on May 10, 1975, turned seventeen years old on that date in 1992. Within one-year of his eligibility for prosecution as an adult for the commission of any felony, cf. La. Const, art. 5, § 19, Mr. Gibson had already pled guilty to the crime of possessing cocaine with the intent to distribute it.[5] This is the felony which constitutes the predicate conviction on the multiple bill. The record reflects that Mr. Gibson was initially placed on probation until his second felony conviction.
His second felony conviction was for manslaughter, a violation of La. R.S. 14:31. This is the felony which constitutes the predicate conviction for the multiple bill.
In his application, Mr. Gibson highlights that the sentencing judge had not, expressly named the predicate conviction in the colloquy during Mr. Gibson’s admission to the truth of the allegations of the multiple bill.[6] The materials supplied by Mr. Gibson in support of his application did not establish that the prosecution had used different predicate convictions for the element of the § 95,1 violation and for the multiple bill, and one of the reasons we ordered the entire district court record filed with us was to clarify this aspect of his motion. After our review of the record, we are now satisfied that Mr. Gibson’s sentence for convicted felon in possession of a firearm was properly enhanced because the felony conviction used to enhance the sentence (manslaughter) is *137 different from the felony 17conviction (possession with intent to distribute cocaine) used as an essential element of the underlying crime. See State v. Baker, 06-2175, p. 15 (La.10/16/07), 970 So.2d 948, 957; State v. Ruiz, 06-1755, pp. 12-13 (La.4/11/07), 955 So.2d 81, 89.[7]
And, from our review of the full record as well, we cannot credit Mr. Gibson’s explicit contention that the multiple bill was oral and not written. It is true, as Mr. Gibson argues, that habitual offender proceedings cannot be instituted orally, that is in the absence of a written multiple bill of information. See State v. Cureaux, 12-0335, pp. 11-15 (La.App. 4 Cir. 5/1/13), 116 So.3d 833, 839-41; State v. Sutton, 544 So.2d 1345 (La.App. 4 Cir.1989) (where we vacated the defendants’ multiple bill sentences because no written multiple bill was filed). See also La.C.Cr.P. art. 464 (“The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged.”); La. R.S. 15:529.1 D(1)(a) (providing for “the district attorney of the parish in which subsequent conviction was had may file an information accusing the person of a previous conviction”); La.C.Cr.P. art. 934(6) (“ ‘Indictment’ includes information and affidavit, unless it is the clear intent to restrict that word to a finding of a grand jury.”).
The record here, however, includes the (written) multiple bill of information. The multiple bill is shown as received or filed on January 14, 2014. The Docket Master, supplied by the prisoner, states for that same date, “Later [following initial ^sentencing], the state filed a multiple bill of information relative to count 1 charging the defendant as a double offender.” The “Waiver of Rights—Plea of Guilty Multiple Offender—La. R.S. 15:529.1,” signed by Mr. Gibson and his retained lawyer, references the multiple bill of information “attached to this form.” And the sentencing judge during the colloquy states, “Now, gentlemen, I have the Second Offender Multiple Bill.” He then poses the question, “How does your client plead?” We conclude that there is no factual basis for his contention that the multiple bill of information was oral and not written. See, e.g., State v. Vincent, 100764, p. 8 (La.App. 4 Cir. 1/19/11), 56 So.3d 408, 414.
And we also give no credit to the prisoner’s claims that he was not informed of the thirty-day time period in which to appeal or of the two-year time period in which to seek post-conviction relief. The transcript of January 14, 2014 clearly reflects that the sentencing judge did properly inform Mr. Gibson.
IV
Having disposed of these incidental matters of concern, we now turn to the “straightforward exercise” of determining whether the prisoner, Mr. Gibson, is serving an illegal sentence. Mead, 14-1051, p. 4, 165 So.3d at 1047.
 A claim that a sentence is illegal is primarily restricted to those instances in which the term of the prisoner’s sentence is not authorized by the statute or statutes which govern the penalty authorized for the crime for which the prisoner has been convicted.[8] See Mead, 14-1051, pp. 3-4, *138 165 So.3d at 1047, (citing State v. Alexander, 14-0401, p. 1 (La.11/7/14), 152 So.3d 137, 137 (per curiam)) (“[U]nless a pleading captioned as a motion to. correct illegal sentence ‘points to a claimed illegal term in the petitioner’s sentence,’ it is not cognizable under [Article] 882.”) (punctuation omitted). Thus, a sentence is illegal when its duration falls outside of the statutorily-provided sentencing limits for the offense- of which the prisoner has been convicted. See La.C.Cr.P. art. 881.2 A(1). See, e.g., State v. LeBlanc, 14-0163, p. 2 (La.1/9/15), 156 So.3d 1168-1170 (per cu-riam); State v. Williams, 12-1092, p. 2 (La.App. 4 Cir. 4/24/13), 115 So.3d 702; 704; State v. Hunter, 02-2742, pp. 2-3 (La.App. 4 Cir. 2/19/03), 841 So.2d 42, 43.
And, in order to determine, the statutorily-provided sentencing limits, we examine “the law in effect on the date of the commission of the offense of which the prisoner was convicted.” See Mead, 14-1051, p. 4, 165 So.3d at 1047 (emphasis in original), (citing State v. Sugasti, 01-3407, p. 4 (La.6/21/02), 820 So.2d 518, 520; State v. Parker, 03-0924, pp. 9-10 (La.4/14/04), 871 So.2d 317, 322 (defendant’s status as a habitual offender is determined as of the date that he commits the charged crime)).[9] “Thus, the version of the penalty in the violated statute as well as the versions of any statutes that enhance that' penalty in effect on the date of the commission of the prisoner’s offense. control the determination of the limits on the penalty.” Mead, 14-1051, pp. 4-5, 165 So.3d at 1047-48.
.So, we first look to -the date of the offense. According to the bill of information,-Mr. Gibson committed the crime of being a convicted felon in | inpossession of a firearm on April 19, 2012. As modeled in Mead, we then review the version of the penalty provision of La. R.S. 14:95.1 in effect on that date. At the time of the commission of the offense by Mr. Gibson, the penalty provided by statute allowed for imprisonment at hard labor “for not less than ten nor more than twenty years without the benefit of probation, parole, or suspension of sentence ...” La. R.S. 14:95.1 B,[10]
We next review the version of the Habitual Offender Law in effect on April .19, 2012. Because the penalty provided by § 95.1 B on a first conviction is punishable by imprisonment for a -term less than an offender’s natural life, “then the sentence to imprisonment shall be for a determinate term not less than- one-half the longest term and not more than twice the longest term prescribed for a first conviction,” La. R.S. 15:529.1 A(l).[11]
Thus, the statutorily provided- sentencing range for a double felony offender at the time of the Mr. Gibson’s firearm possession is not less than ten years (one-half the maximum) and not more than forty years (twice the maximum). Because Mr. Gibson was sentenced to imprisonment at hard labor for ten years (the minimum), his sentence clearly falls within the authorized sentencing range and is therefore a legal sentence. And, because his sentence does not contain an illegal term, the dis *139 trict judge was legally correct in denying his motion. See Mead, 14-1051, pp. 7-8, 165 So.3d at 1048-1049.
_bV
Before concluding our explanation, we here dispel for Mr. Gibson some other misunderstandings he appears to rely upon in his application.
It is true that any sentence imposed under the Habitual Offender Law “shall be at hard labor without benefit of probation or suspension of sentence.” La. R.S. 15:529.1 G. That provision, however, does not preclude the requirement that this sentence be served without parole eligibility. But, as we pointed out in Part III, ante, this is Mr. Gibson’s third felony conviction. And “[a] person convicted of a third or subsequent felony offense shall not be eligible for parole.” La. R.S. 15:574.4 A(l)(a).[12] Just as importantly, it must be noted, because the underlying conviction (convicted felon in possession of a firearm) restricts parole ■ eligibility, the conditions imposed by the penalty enhancement for a recidivist like Mr. Gibson necessarily incorporate such condition of the sentence. See State v. Bruins, 407 So.2d 685, 687 (La.1981).[13] Thus, Mr. Gibson’s sentence is ten years at hard labor without the benefit of parole, probation; or suspension of sentence. See La. R.S. 14:95.1 B.
And, in light of Mr. Gibson’s admission at sentencing that he is an habitual offender, having been previously convicted of manslaughter, an additional consequence of his adjudication as an habitual offender is that he is ineligible for the diminution of his sentence for good behavior. See La. R.S. 15:571.3 C(l).'
Jj*VI
We are mindful that when a prisoner’s motion to correct an illegal sentence fails to identify an illegal term, we ordinarily ought to consider whether he might nonetheless be entitled to any remedy if his motion were construed as an application for post-conviction relief. See State ex rel. Ashford v. State, 15-0625 (La.2/19/16), 184 So.3d 674 (per curiam); Mead, 14-1051, p. 9, 165 So.3d at 1050-51.[14] But here we find that unnecessary. As we noted in Part II, ante, Mr. Gibson has already filed an application for post-conviction relief essentially raising issues related to the sentencing, which we find are not cognizable on collateral attack. And, in any event, he has applied to the Supreme Court of Louisiana for a writ of certiorari with respect to our disposition. See State v. Gibson, unpub., 15-0996 (La.App. 4 Cir. 09/25/15), cert. app. pending 2015-KH-1857 (La.). Accordingly, we will not in this case further consider whether his motion should be construed as an application for post-conviction relief.
*140 DECREE
We grant the writ. We conclude that the district judge’s ruling denying Jerome Gibson’s “Motion to Correct an Illegally Adjudicated Sentence Citing Louisiana Criminal Code of Procedure Article 882” is correct as a matter of law. Because a legal sentence imposed for a felony conviction cannot be modified once execution of the sentence has commenced, see La. C.Cr.P. art. 881 A, we accordingly deny the prisoner any relief from his legal sentence.
WRIT GRANTED; RELIEF DENIED

. For an explanation of this dispositional language, see State v. Brown, 15-0855, pp. 6-9 (La. App 4 Cir. 10/21/15), 176 So.3d 761, 766-68, writ denied, 15-2250 (La.2/5/16), 186 So.3d 1167.

. It appears that the application for post-conviction relief was timely. The time period to appeal his conviction and sentence expired thirty days after his conviction and sentencing on January 14, 2014. Because Mr. Gibson did not file an appeal, his conviction was final for PCR purposes orí February 13, 2014. Thus, as a general rule, Mr. Gibson had at least until February 13-, 2016, by which to seek post-conviction relief. See La.C.Cr.P. arts. 914 B(l), 930.8 A.

.Article 930.3 of the Louisiana Code of Criminal Procedure, which enumerates the grounds upon which post-conviction relief may be granted, “provides no basis for review of claims of excessiveness or other sentencing error post-conviction.” State v. Thomas, 08-2912 (La. 10/16/09), 19 So.3d 466 (quoting State ex rel. Melinie v. State, 93-1380 (La. 1/12/96), 665 So.2d 1172 (per curiam)) (emphasis added). See also La.C.Cr.P. art. 930.3. And a “habitual offender adjudication ... constitutes sentencing for purposes of Melinie and La.C.Cr.P. art. 930.3....” Cotton, 09-2397, p. 2, 45 So.3d at 1030 (emphasis added). See also Thomas, 08-2912, 19 So.3d 466. Clearly then, no statutory vehicle is offered for post-conviction consideration of claims of ineffective assistance of counsel arising out of habitual offender proceedings. Mr. Gibson, despite the fact that his sentence was negotiated (which would have precluded an appeal of the sentence itself by application of La.C.Cr.P. art. 881.2 A(2)), was required to raise his ineffective-assistance-of-counsel-at-sentencing claim on direct appeal. See State v. Paulson, 15-0454, pp. 9-10 (La.App. 4 Cir. 9/30/15), 177 So.3d 360, 367.

. Mr. Gibson was also arrested, and pled guilty to aggravated assault, which is a misdemeanor. See La, R.S. 14:37.

. His conviction, according to the multiple bill, occurred on March 5, 1993. The crime is a violation of the former La. R.S. 40:967 B(l), now La. R.S. 40:967 B(4)(a). See 1997 La. Acts 1284; 2001 La. Acts 403.

. See La. R.S. 15:529.1 D(l)(a).

. See also State v. Sanders, 337 So.2d 1131 (La.1976), overruled in part by Baker and approved in part by Ruiz.

. A sentence may also be illegal because it is indeterminate. See La.C.Cr.P. art. 879 (“If a defendant who has been convicted of an offense is sentenced to imprisonment, the court shall impose a determinate sentence."). This circumstance typically arises when a defendant is convicted of multiple counts but fails to receive a sentence as to each count. See, e.g., State v. Williams, 12-0050, p. 8 (La.App. *138 4 Cir, 1/16/13), 108 So.3d 319, 326. See also State v. Patterson, 384 So.2d 790, 791 (La. 1980) (per curiam).

.The fact that a law may-change after the commission of the crime to lower the possible penalty "does not extinguish liability for the offense committed under the former statute." Sugasti, 01-3407, p. 5, 820 So,2d at 520.

.- This, is the same .version as the current one’.

. This too is the same version as the. current one.

. But see State v. Lewis, 15-0773, pp. 4-5 (La.App. 4 Cir. 2/3/16), 187 So.3d 24, 30.

. In such circumstances, it is inconsequential if the sentencing judge does not pronounce, recite, or stipulate that the sentence is to be served without the benefit of parole. See La. R.S. 15:301.1 A. See also State v. Williams, 00-1725, p. 10 (La.11/28/01), 800 So.2d 790, 799 (holding that that statute "self-activates the correction and eliminates the need to remand for a ministerial correction of an illegally lenient sentence which may result from the failure of the sentencing court to impose punishment in conformity with that provided in the statute”).

. See also State v. Humphrey, 13-0481, p. 1 (La. 11/8/13), 126 So.3d 1280, 1280 (per curiam) ("Because the motion did not point to a claimed illegal term in the sentence, it presented a claim properly cognizable in an application for post-conviction relief, if at all") (emphasis added);, State v. Parker, 98-0256 (La.5/8/98), 711 So.2d 694.