PAUL A. BONIN, Judge.
 

 |)The trial court accepted Perry Lewis’ guilty plea to the offense of simple possession of cocaine. Pleading under
 
 Crosby,
 
 Mr. Lewis reserved his right to appeal the trial court’s adverse pretrial ruling which had denied his motion to suppress the evidence of the cocaine.
 
 [1]
 
 Mr. Lewis argued that the police officer’s seizure of a metallic black box and search of its contents violated his Fourth Amendment right and his Louisiana constitutional right against unreasonable searches because the officer lacked reasonable suspicion to con
 
 *153
 
 duct an investigatory stop as well as probable cause to search his property.
 

 Because we conclude that Mr. Lewis discarded or abandoned the black box before he himself was seized by the police, and that he no longer had any reasonable expectation of privacy in the box or its contents, the trial judge did not abuse her discretion in denying the motion to suppress.
 

 12Thus, we affirm his conviction and sentence.
 
 [2]
 
 We explain our conclusions below.
 

 I
 

 In this Part we discuss the facts which were developed at the hearing on the motion to suppress. At the outset we emphasize that only one witness, Jaamane Roy, a New Orleans police officer testified. Mr. Lewis did not avail himself of the provisions of La.C.Cr.P. art. 703 E(l) and introduced no evidence to contradict Officer Roy’s testimony.
 
 [3]
 

 Officer Roy testified that he and a partner were on pro-active patrol during daylight on a New Orleans street on which there were numerous blighted and abandoned houses. Neighbors had been complaining to the police that illegal drug dealing was occurring in their neighborhood. The officers were in an unmarked car. They were not in their police uniforms but were wearing their badges around their necks.
 

 As they turned onto the street they observed Mr. Lewis and another man sitting on the steps leading to the porch of one the abandoned houses. Officer Roy deduced that the house was abandoned because its windows were boarded up, there was no electrical meter, and there was an official sign declaring its impending governmental confiscation.
 

 |sThe officers saw that Mr. Lewis had a black object in his hand into which his companion was looking. When Mr. Lewis and his companion noticed the officers, who were still in their car, they reacted nervously, and Mr. Lewis placed the black object on the step below him, under his legs. Officer Roy described the placement as a “throw-down.”
 

 After this, the officers approached in their vehicle, exited the car, and told the two men to come to them. As Mr. Lewis and the other man got up to go to the officers, Mr. Lewis did not make any effort to retrieve the black object, but left it on the steps of the abandoned house.
 

 At this point, Officer Roy seized the black object and saw that it was a black magnetic key box, the type of key box with which he is familiar from his four years of police service as something used in the illegal drug trade to transport and conceal illegal drugs. He opened the key box to inspect its contents and observed five individually wrapped rocks of cocaine.
 

 Although Officer Roy testified that the two men were free to leave at the time the officers called to them, he later described their status as being detained while he was attending to the black object. Following
 
 *154
 
 his inspection of the key box’s contents, both men were arrested.
 

 II
 

 We turn in this Part to a consideration of the doctrines which govern the application of the exclusionary rule.
 

 _kA
 

 The Fourth Amendment to the U.S. Constitution, applicable to the states through the Fourteenth Amendment, protects the right of the people “against unreasonable searches and seizures.” U.S. Const. Amend. IV;
 
 see also Mapp v. Ohio,
 
 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The Louisiana Constitution, too, protects “persons, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy.” La. Const. ART. 1, § 5. Indeed, the protection against unreasonable searches and seizures under the state constitution is in limited circumstances even greater than that under the federal constitution.
 
 See State v. Tucker,
 
 626 So.2d 707 (La.1993) (see discussion in Part II-B, post).
 

 “Reasonableness is always the touchstone in striking the balance between legitimate law enforcement concerns, such as officer safety, and protected individual privacy interests.”
 
 State v. Bell,
 
 09-574, p. 14 (La.App. 4 Cir. 12/9/09), 28 So.3d 502, 512. Accordingly, any inquiry under the Fourth Amendment and Article 1, Section 5 always centers on reasonableness.
 

 In order for a search or seizure of an item to be treasonable, it is not sufficient that an individual have a subjective expectation of privacy in that item; only when “society is prepared to accept that expectation as objectively reasonable” is the item entitled to Fourth Amendment protection.
 
 California v. Greenwood,
 
 486 U.S. 35, 39, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988) (noting, “society would not accept as reasonable respondents’ claim to an expectation of privacy in trash left for collection in an area accessible to the public”). This is so because “police cannot reasonably be expected to avert their eyes from evidence of criminal activity that could have been observed by any member of the public.”
 
 Id.
 
 Hence, as a general rule, when an individual abandons or discards an item in public view, he no longer has an |,.¡expectation of privacy in that item which society is prepared to accept and reasonable, and, thus, the protection of the federal and state constitutions do not extend to that item. In such cases, there is “no seizure in the sense of the law when the officers examined the contents ... after it had been abandoned.”
 
 Hester v. United States,
 
 265 U.S. 57, 58, 44 S.Ct. 445, 68 L.Ed. 898 (1924) (finding in the Prohibition-era case, “[t]he defendant’s own acts, and those of his associates, disclosed the jug, the jar and the bottle”).
 

 This general rule concerning abandoned or discarded property, however, does have one exception. If the property is abandoned or otherwise disposed of as a result of any
 
 prior
 
 unlawful intrusion, it “cannot be legally seized by the police officers.”
 
 State v. Chopin,
 
 372 So.2d 1222, 1224 (La.1979). And, of course, in order to enforce the mandates of the Fourth Amendment and La. Const. Art. 1, § 5, evidence recovered pursuant to an unconstitutional search or seizure is inadmissible.
 
 Mapp,
 
 367 U.S. at 657, 81 S.Ct. 1684;
 
 State v. Hamilton,
 
 2009-2205, p. 3 (La.5/11/10), 36 So.3d 209, 211.
 

 But, as
 
 Chopin
 
 reminds us, if the property is abandoned “without any prior unlawful intrusion into a citizen’s right of freedom from governmental interference, then such property may be lawfully seized” because “[i]n such cases, there is no expec
 
 *155
 
 tation of privacy and thus no violation of a person’s custodial rights.”
 
 Chopin, supra.
 

 Thus, in determining whether the police are entitled to seize and search property abandoned by the defendant, the gateway inquiry is whether the abandonment of the property occurred
 
 before or after
 
 the governmental intrusion. Only if the abandonment occurred after the governmental intrusion is it necessary to determine whether the governmental intrusion was lawful or unlawful.
 

 [[Image here]]
 

 As a matter of law, the point at which the governmental intrusion occurs is different for the Fourth Amendment than for Article 1, Section 5.
 

 The governmental intrusion required for triggering a Fourth Amendment inquiry includes the necessary (but not sufficient) component that “a person is ‘seized’ only when,
 
 by physical force or show of authority,
 
 his freedom of movement is restrained.”
 
 U.S. v. Mendenhall,
 
 446 U.S. 544, 553, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) (emphasis added);
 
 see also California v. Hodari D.,
 
 499 U.S. 621, 627-628, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). Thus, “a person has been ‘seized’ within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave.”
 
 Mendenhall,
 
 446 U.S. at 554, 100 S.Ct. 1870. In the absence of restraint of the person imposed by physical force or show of authority there is no “foundation whatever for invoking constitutional safeguards.”
 
 Id.
 
 at 553, 100 S.Ct. 1870.
 
 “Mendenhall
 
 establishes that the test for existence of a show of authority’ is an objective one.”
 
 Hodari D.,
 
 499 U.S. at 628, 111 S.Ct. 1547. The test is “not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer’s words and actions would have conveyed that to a reasonable person.”
 
 Id.
 
 And even “with respect to a show of authority as with respect to application of physical force” a “seizure” does not occur unless the subject yields.
 
 Id.
 
 at 626, 111 S.Ct. 1547.
 

 Thus, when the
 
 Hodari D.
 
 defendant panicked when he saw the police car, took flight, and tossed away what appeared to be a small rock of cocaine as the police gave chase ordering him to stop, because he did not yield or comply until he was tackled, the abandoned cocaine was not the fruit of a seizure and was not thereby excluded from or suppressed for use in evidence.
 
 Id.
 
 at 623 and 629, 111 S.Ct. 1547.
 

 17The governmental intrusion required for triggering an Article 1, Section 5 inquiry is, however, somewhat different. For the purposes of the Louisiana constitutional protection,
 
 Hodari D.
 
 only sets the limits for determining whether an actual stop has occurred.
 
 See Tucker,
 
 626 So.2d at 712. The
 
 Hodari D.
 
 requirement that there must be an “actual stop” before property is abandoned or discarded in order to trigger any inquiry under the Fourth Amendment does not, however, fully dispose of the inquiry under Louisiana’s constitution.
 
 Id.
 
 Because citizens of Louisiana have “greater protections” than those provided by the Fourth Amendment, her citizens have
 
 “additional
 
 protections” from governmental intrusion, including protecting individuals not only from an “actual stop” but also from an “imminent actual stop.”
 
 Id.
 
 (emphasis in original), explicitly relying on
 
 State v. Belton,
 
 441 So.2d 1195 (La.1983).
 

 An imminent actual stop “is only when the police come upon an individual with such force that, regardless of the individual’s attempt to flee or elude the
 
 *156
 
 encounter, an actual stop of the individual is
 
 virtually certain.” Tucker,
 
 626 So.2d at 712 (emphasis in original). Illustrative of the factors to be used in assessing whether the police force used was virtually certain to result in an actual stop include (1) the officers’ proximity to the individual at the outset of the encounter, (2) whether the individual is surrounded by officers, (3) whether the officers are approaching with weapons drawn, (4) the mobility of the police
 
 vis-a-vis
 
 the individual, (5) the location and characteristics of the area of the encounter, and (6) the numbers of officers involved in the encounter.
 
 Id.
 
 at 712-718.
 

 Thus, for Louisiana constitutional purposes, it is necessary to determine whether the abandonment of the black key box by Mr. Lewis occurred before or after either an actual stop
 
 or
 
 an imminent actual stop. Only if the abandonment [ 8occurred
 
 after
 
 an actual stop or an imminent actual stop would it be necessary for us to consider the legality of the governmental intrusion.
 

 Ill
 

 The factual determination of when the abandonment took place is entrusted to the trial-court judge.
 

 There is, of course, no factual question that the abandonment — as described by Officer Roy without contradiction — took place
 
 before
 
 Mr. Lewis was actually stopped by either physical force or his submission to a show of police authority. Not until after he had placed the key box on the step below him did the police approach and request compliance with any demand. Thus, the Fourth Amendment inquiry is at an end. Mr. Lewis has not shown that at the time Officer Roy searched the contents of the key box he had a reasonable expectation of privacy for Fourth Amendment purposes in the key box or its contents.
 

 Because the Fourth Amendment “actual stop” requirement is co-extensive with and thus dispositive of Louisiana’s prong for an “actual stop” requirement, we turn then to a limited examination of the record facts to determine whether for Louisiana constitutional purposes the officers’ show of authority was virtually certain to result in an actual stop of him. Applying the illustrative factors,
 
 ante,
 
 a finding of fact that an actual stop was not virtually certain to occur at the point when Mr. Lewis discarded the key box is reasonable. The officers were out of uniform and in an unmarked car when Mr. Lewis became nervous upon seeing them and placed the key box on a lower step. Any “show of force” by the officers was negligible. While the record is not clear as to the distance between the officers’ car and Mr. Lewis on the steps, the evidence shows that at the time Mr. |9Lewis abandoned the key box he was not surrounded by the officers, and at no point does the record suggest that the officers had drawn weapons.
 

 This factual situation is clearly distinguishable from that in
 
 Chopin,
 
 where the Louisiana Supreme Court found that the defendant’s discarding of a brown paper bag containing marijuana occurred after the police “swung the patrol car around into his path, switched on the bright lights, and braked not more than three or four feet in front of him.”
 
 Chopin,
 
 372 So.2d at 1224-1125. The
 
 Chopin
 
 court concluded that “[s]uch an approach clearly indicated that some form of official detention was imminent.”
 
 Id.
 
 at 1225.
 

 Mr. Lewis’ action is similar to that of the defendant in
 
 State v. Matthews,
 
 a case in which we decided that the defendant dropped the glass pipe before the officer intruded on his privacy interests.
 
 See State v. Matthews,
 
 94-2112, p. 4 (La.App. 4 Cir. 4/26/95), 654 So.2d 868, 871. In
 
 Mat
 
 
 *157
 

 thews,
 
 the defendant was sitting on the stoop of a house when the officer in an unmarked (but obviously identifiable) police car observed him “stand up, place a clear glass tube on the step, and crush it.”
 
 Id.
 
 p. 2, at 869. There was nothing to suggest that an actual stop of the defendant was imminent. Moreover, an individual’s subjective nervous reaction to the presence or arrival of police near to him is not sufficient to conclude that an actual stop of him is reasonable.
 
 See State v. Vance,
 
 633 So.2d 819 (La.App. 4 Cir. 2/25/94).
 

 In our case, there is nothing in the officers’ actions as described by Officer Roy from which a reasonable fact-finder could conclude that they came upon Mr. Lewis with such force that any attempt by Mr. Lewis to flee them or elude an encounter with them was virtually certain to result in his arrest such that his abandonment of the key box resulted from such an imminent actual stop. Thus, the |inabandonment took place before, not after, any imminent actual stop, and Louisiana’s second-prong protection against “imminent actual stops” is not triggered on these facts.
 

 Because any seizure of Mr. Lewis, whether lawful or unlawful, occurred
 
 after
 
 he had abandoned the key box, Officer Roy was free to retrieve the key box and its contents.
 
 See State v. Richardson,
 
 09-0638, p. 6 (La.10/20/09), 23 So.3d 254, 258 (per curia m). Thus, Mr. Lewis’ abandonment of the key box containing the cocaine could not be “attributable to any prior illegality by the police.”
 
 Id.
 
 p. 3, at 256.
 

 IV
 

 Importantly, in order to obtain a hearing on a motion to suppress evidence, the defendant must allege facts that show he has a reasonable expectation of privacy in the item seized.
 
 See
 
 La.C.Cr.P. Art. 703 E(l) (“An evidentiary hearing on a motion to suppress shall be held only when the defendant alleges facts that would require the granting of relief.”);
 
 see also Chopin,
 
 372 So.2d at 1224 (noting when a citizen abandons property without any prior unlawful governmental intrusion, “there is no expectation of privacy”). Then, at the suppression hearing, the prosecution bears the burden of proving the admissibility of evidence seized without a warrant. La. C.Cr.P. Art. 703 D. Typically, unless justified by narrowly drawn exceptions to the warrant requirement, searches and seizures conducted without warrants issued on probable cause are
 
 per se
 
 unreasonable.
 
 State v. Surtain,
 
 2009-1835, p. 7 (La.3/16/10), 31 So.3d 1037, 1043,
 
 citing Minnesota v. Dickerson,
 
 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). But when the property is abandoned by the defendant before — not after — any governmental intrusion (whether actual stop or imminent actual stop) with the defendant’s | n privacy interests, the search or seizure is not unreasonable because the defendant had no
 
 reasonable
 
 expectation of privacy in the abandoned property.
 

 In light of the uncontradicted testimony of Officer Roy, the trial-court judge denied his motion to suppress. An appellate court ultimately reviews a finding of reasonableness in the context of correctly applying the exclusionary rule under the
 
 de novo
 
 standard.
 
 See State v. Pham,
 
 01-2199, p. 4 (La.App. 4 Cir. 1/22/03), 839 So.2d 214, 218. Aside from the ultimate determination of reasonableness, a trial court’s determination of a motion to suppress evidence is entitled to great weight and will not be set aside absent an abuse of discretion.
 
 See State v. Wells,
 
 2008-2262, p. 5 (La.7/6/10), 45 So.3d 577, 581;
 
 see State v. Pham, supra.
 

 Because the trial-court judge properly applied the legal doctrines governing the
 
 *158
 
 invocation of the exclusionary rule to un-contradicted facts, we conclude that she did not abuse her discretion by denying Mr. Lewis’ motion to suppress the evidence. Moreover, because the suppression ruling is correct, there is no impediment to Mr. Lewis’ guilty plea and resulting conviction.
 

 DECREE
 

 The conviction and sentence of Perry Lewis are affirmed.
 

 AFFIRMED
 

 BELSOME, J., concurs in the result.
 

 [1]
 

 .
 
 See State v. Crosby,
 
 338 So.2d 584 (La.1976). Mr. Lewis, it is noted, had previously applied for us to exercise our supervisory authority in connection with the pretrial ruling; we denied the application, noting that he had an adequate remedy on appeal in the event he was convicted.
 
 See State v. Lewis,
 
 2010-1443 (La.App. 4 Cir. 10/13/10) (unpub.).
 

 [2]
 

 . The trial judge sentenced Mr. Lewis to five years in the custody of DOC, which was suspended, placed him on active probation for a period of five years, and explicitly imposed the sentence under the provisions of La. C.Cr.P. art. 893. Notably, as we always do, we have reviewed the entire record for errors patent and have detected none.
 
 See
 
 La. C.Cr.P. art. 920(1).
 

 [3]
 

 . La.C.Cr.P. art. 703 E(l) permits a defendant to testify at the hearing "without being subjected to cross-examination on other matters” and his testimony cannot be used by the prosecution “except for the purpose of attacking the credibility of the defendant's testimony at the trial on the merits.”