PAUL A. BONIN, Judge.
hWe granted the prosecution’s application for a writ of certiorari in order to review whether the district judge erred when he suppressed for use at trial the illegal narcotics evidence seized from the person of the defendant, Jonathan McClendon, following an investigatory stop.[1] The parties were afforded oral argument.
In his motion to suppress, Mr. McClen-don contended that the police violated his fundamental right to be secure in his person when he was unconstitutionally seized without reasonable suspicion. After hearing the testimony of Sergeant Eric Gillard, the district judge granted Mr. McClen-don’s motion to suppress. After our de novo review, we also hold the seizure to be unreasonable under the Fourth Amendment and find that the officers lacked reasonable suspicion to effectuate a lawful investigatory stop. Furthermore, we find that the district judge did not abuse his discretion in granting Mr. McClendon’s motion to suppress. We thus affirm the ruling and remand the matter to the trial court for further proceedings. We explain our decision in greater detail below.
Jl[1]
In this Part, we set forth the facts pertinent to our review. At approximately 7:15 p.m. on September 10, 2013, Mr. McClen-don and a companion were standing near the corner of Second and Dryades Streets in New Orleans. Sergeant Gillard, the only witness to testify at the suppression hearing,[2] stated that it “was still kind of daylight” and “wasn’t actually getting dark” at that time. Sergeant Gillard described the neighborhood in which Mr. McClendon and his companion were standing as one of the worst in the Sixth Police District, which covers the area commonly referred to as “Central City.” According to Sergeant Gillard, in the vicinity of that corner, there is bar that is a nuisance and attracts illegal conduct, such as shootings, robberies, stabbings, fights, and sales of illegal narcotics.
Sergeant Gillard, a nineteen-year veteran of the police force, was traveling on Dryades Street in a police unit following several car lengths behind another unit occupied by two other officers. As the lead car approached Second Street, the officers observed Mr. McClendon and his companion. According to Sergeant Gil-lard, when Mr. McClendon saw the police vehicle, he became “kind of anxious and kind of hurried to get from the area.” Mr. McClendon then entered a vehicle driven by his companion, and the vehicle attempted to pull off. At this point, the ^police elected to conduct an investigatory stop, and the lead police unit blocked in the vehicle such that it could not proceed down the road.
*244 Subsequent to the initiation of the investigatory stop, the officers approached the vehicle, noticed that the vehicle’s brake tag was expired, and explained to the men their reason for stopping and detaining them. As Sergeant Gillard approached the vehicle from the passenger side, he observed Mr. McClendon in the vehicle fumbling with his waistband area and looking around nervously as if he was trying to reach for or destroy something.
The officers then elected to remove the subjects from the vehicle and conduct a limited weapons frisk. At this point, Mr. McClendon became visibly nervous and started shaking. When Sergeant Gillard patted down Mr. McClendon’s right front pocket area, he felt a bulge. Mr. McClen-don then blurted out that “it was drugs.” Sergeant Gillard advised Mr. McClendon of his rights and handcuffed him. He recovered crack cocaine wrapped in plastic from Mr. McClendon’s front pocket. Sergeant Gillard then re-advised Mr. McClen-don of his rights and explained that he was being placed under arrest for possession of cocaine. While in the patrol car, Mr. McClendon made statements that he was just trying to take care of his family. Sergeant Gillard was not present, however, when other incriminating statements were made by Mr. McClendon.
After hearing Sergeant Gillard’s testimony, the district judge suppressed for use at trial the evidence seized from Mr. McClendon as well as the statements made by him.
Ji.II
In this Part, we discuss the legal precepts that guide our review. The Fourth Amendment to the United States Constitution[3] and Article I, Section 5 of the Louisiana Constitution protect persons against unreasonable searches and seizures. It is important to remember that “the Fourth Amendment protects people, not places.” Terry v. Ohio, 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (citing Katz v. U.S., 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). In order for the Fourth Amendment to guard a citizen from unreasonable state action, however, that person must have a reasonable expectation of privacy at the time of the search or seizure. See id. See also State v. Clausen, 97-0885, p. 4 (La.App. 4 Cir. 7/2/97), 697 So.2d 1066, 1068.
“Reasonableness is always the touchstone in striking the balance between legitimate law enforcement concerns, such as officer safety, and protected individual privacy interests.”[4] State v. Francis, 10-1149, pp. 4-5 (La.App. 4 Cir. 2/16/11), 60 So.3d 703, 708 (citing State v. Bell, 09-0574, p. 14 (La.App. 4 Cir. 12/9/09), 28 So.3d 502, 512). Warrantless searches and seizures are per se unreasonable under the Fourth Amendment unless the governmental conduct is shielded by one of the few narrow exceptions to the warrant requirement. See State v. Surtain, 09-1835, p. 7 (La.3/16/10), 31 So.3d 1037, 1043 (citing Minnesota v. Dickerson, 508 U.S. 366, 372, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993)). The prosecution carries the burden of proving that a warrantless search is com *245 patible with one of these exceptions and is thus reasonable under the Fourth Amendment. See La.C.Cr.P. art. 708 D. This requires that pertinent facts and circumstances be articulated through testimony by 15law enforcement officials at evidentiary hearings on motions to suppress. See State v. Temple, 02-1895, p. 5 (La.9/9/03), 854 So.2d 856, 860.
 A Fourth Amendment violation alone, however, is not sufficient to justify the suppression of evidence recovered pursuant to unconstitutional searches and seizures. See Herring v. U.S., 555 U.S. 135, 140, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009) (citing Illinois v. Gates, 462 U.S. 213, 223, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). If the prosecution fails to elicit adequate information, the district judge should still only grant a motion to suppress upon a finding that the application of the exclusionary rule furthers the interest protected by that constitutional guarantee. See Hudson v. Michigan, 547 U.S. 586, 593, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006); Wong Sun v. U.S., 371 U.S. 471, 491-492, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); U.S. v. Ceccolini, 435 U.S. 268, 278-279, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978).
With regards to violations of the Fourth Amendment, “[t]he exclusionary rule should only apply where it “results in appreciable deterrence” of police misconduct. Id. at 141, 129 S.Ct. 695 (citing United States v. Leon, 468 U.S. 897, 909, 104 S.Ct. 3405, 82 L.Ed.2d 677 (2004)) (internal punctuation omitted). This requires “an assessment of the flagrancy of the police misconduct,” and review of whether “the law enforcement officer had knowledge, or may be properly charged with knowledge, that the search was unconstitutional under the Fourth Amendment.” Id. at 143, 129 S.Ct. 695. The district judge, prior to making his ruling on a motion to suppress, should then weigh the benefit of this deterrence against the social costs of the application of the exclusionary rule, namely letting guilty, possibly dangerous defendants go free and stifling truth seeking. See id. at 141, 129 S.Ct. 695.
| fiIn our review of a district judge’s decision to deny or grant a petitioner’s motion to suppress, we first look to the factual findings underlying the judge’s decision. We grant great deference to these findings of fact, and will “not overturn those findings unless there is no evidence to support those findings.” State v. Wells, 08-2262, p. 4 (La.7/6/10), 45 So.3d 577, 580. See also State v. Morgan, 09-2352, p. 5 (La.3/5/11), 59 So.3d 403, 406 (“Furthermore, a reviewing court must give due weight to factual inferences drawn by resident judges.”). This extremely heightened deference is rooted in the limitations of our appellate jurisdiction set forth in La. Const. art. 5, § 10(B), which provides: “In criminal cases, [an appellate court’s] jurisdiction extends only to questions of law.” This limited scope of review also stems from the “complementary role of trial courts and appellate courts,” State v. Love, 00-3347, p. 9 (La.5/23/03), 847 So.2d 1198, 1206, as district judges have the unique “opportunity to observe the witnesses and weigh the credibility of their testimony.” Wells, 08-2262 at p. 5, 45 So.3d at 581.
Applying the district court’s supported findings of fact, we review the district judge’s holdings on questions of law, including the reasonableness of government conduct under the Fourth Amendment, de novo. See Id., 08-2262 at p. 4, 45 So.3d at 580; State v. Pham, 01-2199, p. 3 (La.App. 4 Cir. 1/22/03), 839 So.2d 214, 218. Should we find no reversible legal error in the court’s reasonableness determination, we then review the *246 district judge’s decision to grant a motion to suppress for abuse of discretion, see Wells, 08-2262 at p. 5, 45 So.3d at 581, as the ruling as to whether the exclusionary rule is being properly applied under Fourth Amendment doctrine is a mixed question of law and fact. See Pham, 01-2199 at p. 3, 839 So.2d at 218. See also State v. Lewis, 11-0889, p. 11 (La.App. 4 Cir. 2/1/12), 85 So.3d 150, 157-158.
JjA
Under the Fourth Amendment, a seizure occurs when an individual “either submits to [a] police show of authority or is physically contacted by the police.” State v. Tucker, 626 So.2d 707, 711 (La.1993) (citing California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991)). The standard applied when making this determination was set forth in United States v. Mendenhall, which requires a reasonable person to believe that he was “not free to leave” the encounter in light of the circumstances surrounding the incident. 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).
La. Const. art. I, § 5 provides more expansive protections to individuals than that supplied by the Fourth Amendment. See State v. Sylvester, 01-0607, p. 3 (La.9/20/02), 826 So.2d 1106, 1108; State v. Harris, 11-0941, p. 5 (La.App. 4 Cir. 8/2/12), 98 So.3d 903, 909. A seizure occurs under Article I, Section 5 “when the individual is either ‘actually stopped’ or when an ‘actual stop’ of the individual is ‘imminent.’ ” Tucker, 626 So.2d at 712. An “actual stop” is only “imminent” when the “police come upon an individual with such force that, regardless of the individual’s attempt to flee or elude the encounter, an actual stop of the individual is virtually certain.” Id.[5] (emphasis in original).
B
The prosecution asserts that this seizure was a constitutionally permissible Terry stop, which allows for police officers, when they observe unusual conduct which leads them to reasonably conclude in light of their experience that criminal ^activity may be afoot, to briefly stop suspicious persons and make reasonable inquiries aimed at confirming or dispelling their suspicions. See Dickerson, 508 U.S. at 373, 113 S.Ct. 2130 (citing Terry, 392 U.S. at 30, 88 S.Ct. 1868); Sylvester, 01-0607 at p. 5, 826 So.2d at 1109. “Although the purpose of the stop is limited and the duration is brief, an investigatory stop constitutes a ‘seizure.’ ” State v. Moreno, 619 So.2d 62, 65 (La.1993) (citing Mendenhall, 446 U.S. 544, 100 S.Ct. 1870). See also Terry, 392 U.S. at 16, 88 S.Ct. 1868 (“[Whenever a police officer accosts an individual and restrains his freedom to walk away, he has ‘seized’ that person” for Fourth Amendment purposes).
In order to perform a lawful investigatory stop, the police must have reasonable suspicion that a particular person is committing, has committed, or is about to commit an offense prior to the seizure of *247 that person. See La.C.Cr.P. art. 215.1 A.[6] Reasonable suspicion for an investigatory stop “is something less than probable cause for arrest.” State v. Fogan, 609 So.2d 1016, 1018 (La.App. 4th Cir.1992). See also Dickerson, 508 U.S. at 873, 113 S.Ct. 2130; Alabama v. White, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). “Police do not have to observe what they know to be criminal behavior before investigating.” State v. Benjamin, 97-3065, p. 3 (La.12/1/98), 722 So.2d 988, 989.
Our review is “an objective inquiry into the totality of the circumstances surrounding the encounter,” State v. Dumas, 00-0862, p. 2 (La.5/4/01), 786 So.2d 80, 81 (citing State v. Kalie, 96-2650, p. 3 (La.9/19/97), 699 So.2d 879, 881), and calls for consideration of whether “the facts available to the officer at the moment 19of the seizure ... warrant a man of reasonable cause in the belief that the action taken was appropriate.” Terry, 392 U.S. at 21-22, 88 S.Ct. 1868 (internal quotations and punctuation omitted, and emphasis added). See also State v. Robertson, 97-2960, pp. 3-4 (La.10/20/98), 721 So.2d 1268, 1270.
“[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.” Terry, 392 U.S. at 21, 88 5.Ct. 1868. See also Francis, 10-1149 at p. 6, 60 So.3d at 709. Inchoate, unparticu-larized hunches are insufficient grounds for detention under La.C.Cr.P. art. 215.1 A. See State v. Denis, 96-0956, p. 4 (La.App. 4 Cir. 3/19/97), 691 So.2d 1295, 1297. This standard is less demanding, however, “not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.” White, 496 U.S. at 330, 110 S.Ct. 2412.
Officers should consider numerous factors before determining whether they have reasonable suspicion under the totality of the circumstances. First, officers can consider whether the person attempted to flee or appeared nervous at the sight of police officers. See State v. Johnson, 94-1170, p. 5 (La.App. 4 Cir. 8/23/95), 660 So.2d 942, 947. See also State v. Huntley, 97-0965, p. 3 (La.3/13/98), 708 So.2d 1048, 1049. “[A]n individual’s subjective nervous reaction to the presence or arrival of police near to him is not sufficient [alone] to conclude that an actual stop of him is reasonable.” State v. Lewis, 11-0889 at p. 9, 85 So.3d at 157. See also State v. Chopin, 372 So.2d 1222, 1224 (La.1979); Morgan, 09-2352 at p. 8, 59 So.3d at 408.
Second, officers can weigh the reputation of the area being patrolled.[7] See State v. Dappemont, 98-0446, p. 12 (La.App. 4 Cir. 3/17/99), 734 So.2d 736, 742. Inquiry into the criminal character of *248 an area is a legally relevant contextual consideration upon which an officer may rely in determining whether reasonable suspicion is present. See Adams v. Williams, 407 U.S. 143, 147-148, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); State v. Ratliff, 98-0094, p. 3 (La.App. 4 Cir. 5/19/99), 737 So.2d 252, 254. But an individual’s presence in an area of expected crime, standing alone, is insufficient to support a reasonable, particularized suspicion that a person is involved in criminal activity. See Illinois v. Wardlow, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000); Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). This is because “[w]e must presume that citizens are law abiding, even those in public housing developments and other targeted high crime areas.” Temple, 02-1895 at p. 7, 854 So.2d at 861.
Third, officers can consider both the time of day and whether the area was dimly lit. See State v. Alvarez, 09-0328, p. 3 (La.3/16/10), 31 So.3d 1022, 1024; State v. Wilson, 00-0178, p. 3 (La.12/8/00), 775 So.2d 1051, 1053; Morgan, 09-2352 at p. 7, 59 So.3d at 407. Finally, we should consider all other cumulative information available to the officers as a result of their training, experience, and common sense when reviewing their determinations in the field. See Terry, 392 U.S. at 27, 88 S.Ct. 1868; State, v. Boyer, 07-0476, p. 17 (La.10/16/07), 967 So.2d 458, 469-170. This means consideration of “the circumstances known to the police ‘not in terms of library analysis by scholars, but as understood by those versed in the field of law | ¶ enforcement.’ ” State v. Huntley, 97-0965 at p. 3, 708 So.2d at 1049 (quoting United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)).
Ill
In this Part, we apply these guiding precepts to the facts of this case. There is no question that Mr. McClendon and his associate were entitled to the protection of the Fourth Amendment and La. Const, art. I, § 5 when this seizure occurred. See, e.g., Terry, 392 U.S. at 9, 88 S.Ct. 1868. The crucial inquiry in this case is whether the police possessed reasonable suspicion to perform an investigatory stop at the time of that seizure. Before deciding whether the officers had reasonable suspicion to stop Mr. McClendon and his associate, however, we must first determine at what point in time the men were “seized” as it is from before that moment that the prosecution must show that the police possessed reasonable suspicion. See La.C.Cr.P. art. 703 D. See, e.g., Alvarez, 09-0328 at p. 3, 31 So.3d at 1024; Harris, 11-0941 at pp. 7-8, 98 So.3d at 911.
The police effected a seizure under both the Fourth Amendment and La. Const, art. I, § 5 at the moment that the police unit blocked in the vehicle containing Mr. McClendon and his companion. Completely blocking in a person’s vehicle with a patrol unit constitutes a seizure as it imposes an “actual restraint” on a person’s movement. See State v. Broussard, 00-3230, pp. 5-6 (La.5/24/02), 816 So.2d 1284, 1288 (per curiam); State v. Zielman, 384 So.2d 359, 362 (La.1980). This seizure constituted a “complete restriction of movement” as the vehicle was not able to proceed down the road, see Broussard, 00-3230 at p. 3, 816 So.2d at | ia1287, and a reasonable person would not feel free to leave under the circumstances. See Mendenhall, 446 U.S. at 554, 100 S.Ct. 1870.
A police car boxing in another vehicle about to drive away is vastly different from a police officer approaching a vehicle to simply ask some casual questions to the driver. See Sylvester, 01-0607 at pp. 4-5, 826 So.2d at 1108-1109. Sergeant Gil-lard’s testimony contains nothing to indi *249 cate that this encounter was consensual on the part of Mr. McClendon or anything less forceful than an investigatory stop. Furthermore, Sergeant Gillard’s testimony confirms the degree of force used in effectuating the stop: “They pulled off from the intersection and kind of they couldn’t go any further because the police vehicle was in front of them.”
That the seizure occurred at that moment is very important as the prosecution cannot utilize the presence of an expired brake tag as justification for the police’s seizure of the men. Sergeant Gillard confirmed in his testimony that the officers did not see the brake tag until after the officers had blocked in the vehicle. Thus, the prosecution must show that the police had reasonable suspicion to conduct an investigatory stop prior to when the police blocked in the vehicle. See La.C.Cr.P. art. 703 D.
We have identified three factors upon which the officers based their suspicion. One is the high crime reputation of the intersection of Second and Dryades Streets. The second is that Mr. McClen-don, upon observing the approaching police, was “kind of anxious.” And third is that Mr. McClendon and his companion “kind of hurried to get from the area.”
Of course, officers may weigh all three of these considerations in determining whether there is sufficient cause present to justify an investigatory stop. The police, however, may not simply rely on high crime neighborhood | ^residents’ fear of interaction with police officers to form the foundation of their suspicions and label them as “reasonable” in hindsight after discovering contraband on the person seized. See U.S. v. Martinez-Fuerte, 428 U.S. 548, 565, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976) (“One such purpose [of the requirement of a warrant] is to prevent hindsight from coloring the evaluation of the reasonableness of a search or seizure.”).
In this case, all that is set forth in Sergeant Gillard’s testimony is that the police were driving in a two-car caravan through a neighborhood that is known for high crime rates. Around 7:15 p.m., while still light outside, they approached the intersection of Dryades and Second Streets and observed Mr. McClendon become “kind of’ nervous and “kind” of hurry to leave the area upon seeing the police unit. The police received no information connecting Mr. McClendon and his associate to criminal activity, and the men were not committing any crime at the time that the police observed them. Police are not permitted to stop people solely because they become “kind of’ nervous upon their realization of the presence of the police. See Chopin, 372 So.2d at 1225.
Nothing contained in Sergeant Gillard’s testimony provides a reasonable basis upon which he and the other two officers could have detained Mr. McClendon and his companion. The prosecution failed to meet their burden set forth in La.C.Cr.P. art. 703 D. After our de novo review, we agree with the district judge’s ruling that the officers lacked reasonable suspicion to conduct an investigatory stop and, thus, that the seizure was unreasonable under the Fourth Amendment. Furthermore, the district judge did not abuse his discretion in granting Mr. McClendon’s motion to suppress. The police conduct in this case must be deterred in order to properly protect citizens from governmental intrusion into their everyday lives. The social cost of suppressing the evidence is Insignificantly outweighed by the need to deter the police from effectuating investigatory stops without reasonable suspicion. The fruit of this unlawful seizure was properly suppressed.[8]
*250 DECREE
Having granted a writ of certiorari, we now affirm the district judge’s ruling which suppressed the narcotics evidence obtained from Mr. McClendon as well as Mr. McClendon’s statements at trial. We remand the matter to the trial court for further proceedings.
WRIT OF CERTIORARI GRANTED; AFFIRMED AND REMANDED.

. See State v. Carter, 13-1452, pp. 1-2 (La.App. 4 Cir. 12/19/13), 131 So.3d 479, 484, 2013 WL 6923712 (discussing the factors to be considered in granting the prosecution's application for a writ of certiorari to review a district judge's decision to grant a defendant's motion to suppress).

. Mr. McClendon did not avail himself of the provisions of La.C.Cr.P. art. 703 E(l) and introduced no evidence to contradict Sergeant Gillard’s testimony. La.C.Cr.P. art. 703 E(l) permits a defendant to testify at an evi-dentiary hearing on a motion to suppress "without being subjected to cross-examination on other matters,” and his testimony cannot be used by the prosecution "except for the purpose of attacking the credibility of the defendant's testimony at the trial on the merits.”

. The limitations on governmental action and remedies for such conduct set forth in the Fourth Amendment and the U.S. Supreme Court’s interpretive jurisprudence apply to State prosecutions through the Fourteenth Amendment. See Mapp v. Ohio, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

. We also apply a reasonableness standard when analyzing governmental conduct under La. Const. art. I, § 5. See State v. Tucker, 626 So.2d 707, 711 (La.1993); State v. Lewis, 11-0889, p. 4 (La.App. 4 Cir. 2/1/12), 85 So.3d 150, 154.

. Because we find that an actual stop occurred in this case, see Part III, post, we need not discuss whether the police's stop of Mr. McClendon and his companion was "imminent.” The Louisiana Supreme Court, however, has set forth factors for this determination: (1) the proximity of the police in relation to the defendant at the outset of the encounter, (2) whether the individual has been surrounded by police, (3) whether the police approached the individual with their weapons drawn, (4) whether the police and/or the individual are on foot or in motorized vehicles during the encounter, (5) the location and characteristics of the area where the encounter takes place, and (6) the number of police officers involved in the encounter. See id. at 712-713.

. La.C.Cr.P. art. 215.1 A provides: "A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, his address, and an explanation of his actions.” This article complies with the standards established under the Fourth Amendment to the U.S. Constitution and La. Const. art. I, § 5. See State v. Denis, 96-0956, p. 3 (La.App. 4 Cir. 3/19/97), 691 So.2d 1295, 1296.

. See Harris, 11-0941 at p. 9, 98 So.3d at 912 n. 4 (discussing the consideration of “high crime areas” in police officer determinations of reasonable suspicion for conducting investigatory stops).

. Though not briefed, we hold that the subsequent search and statements by Mr. McClendon were not sufficiently attenuated to dissipate the taint of the unlawful conduct "considering the[ir] temporal proximity [to the illegality], the lack of intervening circumstances, and the purpose and flagrancy of the misconduct.” Moreno, 619 So.2d at 67. See also Wong Sun v. U.S., 371 U.S. 471, 491, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).